Hillsborough,
Dec., 1897.

## BURNHAM, *Adm'r*, v. CONCORD RAILROAD.

If a motion for a nonsuit founded upon an alleged deficiency in the plaintiff's evidence is erroneously denied, subject to exception, and the defendant proceeds with the trial and introduces evidence, the exception is waived if the deficiency is supplied by either party before the case is submitted to the jury.

In the absence of direct evidence as to whether a freight brakeman knew the situation of an arch by which he was struck and killed while standing on a car of average height, evidence that he was informed by his immediate employer that he could pass safely on such cars warrants a submission to the jury of the question whether, in the exercise of due care, he ought to have known the danger.

CASE, for negligence resulting in the death of the plaintiff's intestate, John Clifford, March 26, 1889. The defendants claimed that the action was not seasonably brought under Laws 1887, *c.* 71, *ss.* 2, 3, and excepted to the ruling of the court against their claim.

The plaintiff offered evidence that Clifford, a freight brakeman in the defendants' employ, was struck by an overhead arch-

way at the north end of the freight house at Manchester and injured so that he died the same night. He had been employed as night brakeman in the yard at Manchester for thirteen days before the accident, working from 8 P. M. to 3 A. M. He had previously been employed as a brakeman in the yard at Nashua, and stated when employed at Manchester that he was an experienced railroad man.

The freight house was 300 feet in length. There were two parallel tracks passing through it north and south and extending northerly of it 202 feet. At each end there was an archway over the two tracks. The top of the archway was formed by a semi-circular brick arch with a radius of twelve feet. Across the extreme upper portion of this arch was a horizontal door slide, the lower edge of which was seventeen and a half feet above the rail. From the west side of a freight car upon the west track, under the north arch, to the west pier of the arch, was $3\frac{22}{100}$ feet. The foot of the arch was $7\frac{62}{100}$ feet above the rail. From the top of the rail to a point in the arch over the middle of the ladder on a car was $16\frac{42}{100}$ feet; between the same points over the west side of the ladder was $15\frac{75}{100}$ feet. The width of the arch at the foot was $24\frac{25}{100}$ feet. Freight cars vary in height from ten to fifteen feet. The average are twelve and a half feet in height. The lighting of the freight house was poor.

Clifford was seen climbing the ladder on the west side of the north end of a car of average height which was being drawn toward the south on the west track. He was nearly under the arch when seen, and had about half his body above the car when he was struck by the arch and killed. The work of the crew with which he was employed was the necessary shifting of cars into and through the freight house where they were unloaded. There was evidence that the east or front track was used for unloading cars in the night-time; that while cars were sometimes shoved on the east track north of the freight house, there was no occasion for a brakeman to go to such cars; that brakemen as a rule did not go on top of cars there; that about all the use made of the back or west track in the freight house was to throw cars in there to get rid of them; that they would not have cars enough to use the back track more than once a week; that as a rule there would be no cars on the back track, and when that track was filled, as a rule no cars would be north of the arch; that at the time of the accident, in the ordinary course of business Clifford might have had occasion to get on top of cars north of the arch on the back track two or three times in his fortnight's work, and might not have been there at all; that the shifting crew were inside the freight house from ten to twenty times in a night.

One Coty, who was in charge of the crew in which Clifford worked, was called as a witness for the defendants. He testified that he told Clifford, relative to the arch, "to look out for himself in going through there on big, high cars,— on common cars he would be all right," and that was all he told him; that Clifford replied that would be all right and that he would look out.

At the close of the plaintiff's evidence a motion for a nonsuit was denied, and at the close of all the evidence a motion that a verdict be ordered for the defendants was also denied. The defendants excepted to the denial of each motion. The question submitted to the jury was whether Clifford knew or ought to have known the situation of the arch. There was a verdict for the plaintiff.

*Burnham, Brown & Warren,* for the plaintiff.

*Joseph W. Fellows, Frank S. Streeter,* and *Charles H. Burns,* for the defendants.

PARSONS, J. Where, after a motion for a nonsuit is erroneously denied, the defendant, instead of risking his case upon the exception, goes on with the trial and introduces evidence, the exception is waived if the deficiency in evidence is supplied by one side or the other before the case goes to the jury. *Gagnon* v. *Dana, ante, p.* 264; *Fletcher* v. *Thompson,* 55 N. H. 308; *Prescott* v. *Hayes,* 43 N. H. 593, 598; *Oakes* v. *Thornton,* 28 N. H. 44; *Bowman* v. *Sanborn,* 25 N. H. 87, 108; *Clough* v. *Bowman,* 15 N. H. 504, 515. Under such circumstances, therefore, an exception to the denial of a motion for a nonsuit made when the plaintiff rested, and an exception to a refusal to direct a verdict for the defendant at the close of all the evidence present the same question : whether upon the whole case there is any substantial evidence tending to prove the affirmative of the issue.

The issue in this case was Clifford's knowledge. The legal effect of knowledge by Clifford of the risk by which he was injured is not questioned. It is conceded that, if he knew the situation, he was of sufficient intelligence and experience to understand and comprehend the danger. The question submitted to the jury was whether Clifford knew or ought to have known the situation of the arch. In other words, did he know or ought he to have known, not only that there was an overhead obstruction at the entrance to the freight house, but that it was at such height above the track as to present the danger by which he was injured if he put himself into the position he did at that particular place? The plaintiff presented no direct evidence upon the question of Clifford's knowledge. In the ab-

sence of direct evidence the question is, what inferences of fact should be drawn from the facts proved? If different inferences can or may reasonably be drawn under all the circumstances in evidence, the jury is the only tribunal authorized to determine which is the correct inference. While if reasonable men cannot differ as to the inference of fact established by the facts proved, or, stating the proposition in another form, if only one inference can reasonably be drawn from the proved or admitted facts, there is no question for the jury. *Hardy* v. *Railroad*, 68 N. H. 523.

From the facts proved by the plaintiff,— Clifford's experience as a railroad man, his employment as one of the crew engaged in shifting cars in and out of the freight house where they were unloaded, the shifting crew being inside the freight house ten to twenty times each night of the thirteen he worked,— it is manifest that the existence of an overhead obstruction at the south entrance of the freight house could not have escaped his attention. No other conclusion can reasonably be drawn from the facts. Whether, considering the fact that his work was in the night-time, the insufficiency of light in the freight house, and the possibility of error in the estimation of the height of the different portions of the arch, it should on these facts be conclusively presumed that he knew on what cars he could safely pass and upon what he could not, would be perhaps doubtful. But as the case was left by the plaintiff, this question is immaterial. For if he knew, as upon the evidence it must be presumed he did know, that there was an unguarded obstruction, as was said in *Hardy* v. *Railroad*, *supra*, 536, the whole burden of his safety rested with him. He was bound to protect himself on low as well as on high cars. Until by some means sufficient to constitute due care he had ascertained that on some cars he could pass safely without special precaution, due care would require him to be on the outlook on every occasion. Nor is the situation altered by the fact that he was injured at the north archway instead of at the south, even if it might be found that he had never been under the north arch upon a car before his injury. Because, knowing the obstruction and danger at one entrance to the building, due care would not permit him to assume without observation that the opposite entrance, with the same apparent construction, did not present any danger.

In *Burnham* v. *Railroad*, 68 N. H. 567, one who worked in a railroad yard in which, wherever he had been, all the guard-rails, switches, and frogs were unblocked, could not, in the exercise of due care, assume that they were guarded by blocking in a part of the yard with which he had no acquaintance. As the evidence stood when the motion for nonsuit was made, the case did not differ in principle from *Burnham* v. *Railroad*, *supra*.

But before the evidence was closed, one Coty, an employee of the defendants in charge of the crew in which Clifford worked, testified that when Clifford first came into the yard he told him to look out for himself in going through the arch on big, high cars,— that on common cars he would be all right. Clifford, whether he learned of the overhead obstruction from Coty or from its situation in plain sight, was bound to exercise due care to inform himself of the nature and extent of the danger. Whether the obligation to inform himself might be satisfied by inquiry of and information from an intelligent person with the means of knowledge, and in charge of the work Clifford was about to undertake, would depend upon all the circumstances affecting the situation. One circumstance materially affecting the question whether, in the exercise of due care, Clifford could or ought to have relied upon what was told him, is the apparent ability, experience, and intelligence of his informant. Whether Coty appeared to be a person upon whom " an experienced railroad man " would or could, in the exercise of due care, properly rely in such a matter, is a question of fact upon which his appearance upon the witness stand may have had great weight. Whether under all the circumstances Clifford relied upon what Coty said and, therefore, as he was on a car of average height, supposed he was incurring no danger, is a question about which it cannot be said on the evidence that the only inference that can reasonably be drawn is fatal to the plaintiff's case. It is as if Duquette, knowing generally the rails in the yard were unblocked, had been instructed by his immediate employer that all the rails north of the bridge (the place of his injury) were blocked. *Burnham* v. *Railroad, supra.* It could not have been held that Duquette assumed a risk of which he did not know, and which he had been told did not exist. Clifford did not assume the risk unless he knew or ought to have known the danger. Coty's statement of what he told Clifford is substantial evidence tending to prove that Clifford might not have known " the situation of the arch,"— that is, that it was so situated as to expose him to danger on a car of average height. It tends to establish in him a belief to the contrary. There is no direct evidence in opposition. If there were, it would have been for the jury to determine the conflict. If there may be cases where the sole inference from the facts established is so conclusive that the contrary testimony of a witness would be entitled to no weight in the minds of reasonable men, the present case is not one of them. The objection that the action was not seasonably brought was properly overruled. *French* v. *Mascoma Co.*, 66 N. H. 90.

*Exceptions overruled.*

CLARK, CHASE, and WALLACE, JJ., did not sit: the others concurred.