Rockingham, }
Jan. 5, 1915. }

## HATTIE M. COPELAND, *Guardian*, *v.* EXETER, HAMPTON & AMESBURY STREET RAILWAY CO.

In an action against a street railway company for injuries to a child who was struck by an electric car, certain evidence deemed insufficient to warrant a finding that the motorman was at fault in failing to discover the infant in a position of peril sooner than he did, or that he was negligent in the management of the car after the danger was disclosed to him.

Where an electric car is passing through a sparsely settled neighborhood, on a down grade of four per cent, and approaching an unused driveway which is visible for a long distance and about which children are not accustomed to play, due care does not require the motorman to reduce the speed to four or five miles an hour, as a measure of protection to those whose presence is not reasonably to be anticipated.

CASE, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1914, of the superior court by *Branch*, J., on the defendants' exceptions to the denial of motions for a nonsuit and a directed verdict.

July 31, 1913, the plaintiff's ward, a boy two years and nine months old, was struck and injured by the defendants' electric car which was passing the plaintiff's premises on a trip from Smithtown to Hampton. The evidence tended to prove that the accident happened at what is known as the lower driveway, which is about 130 feet from the plaintiff's house and runs across the car track to her premises. At the time of the accident it was unplanked and grassed over, and there was no evidence of its use for any purpose. Some grass or small bushes grew by the side of the driveway a few feet from the track. A motorman can see the lower driveway for a long distance as a car approaches it from Smithtown. Nearer the plaintiff's house is a used and planked way, known as the upper driveway, which leads across the track to her premises. Some distance below the lower driveway, at the Brown place, is a blind driveway where cars were run very slowly. The neighborhood is sparsely settled.

As the car passed the upper driveway just before the accident, it was running from twelve to fifteen miles an hour on a down grade of about four per cent. The power was shut off and the brakes were turned up so that the shoes were rubbing the wheels. The

motorman had the car under control and was reducing the speed somewhat on account of the blind driveway at the Brown place. When the car was nearly opposite the Copeland house, the motorman saw a small girl in the field at the lower driveway, about twenty feet from the track, and sounded the gong.   Immediately afterward he saw a small boy rise up from behind the grass or bushes fringing the driveway and come alongside the track.   As soon as he saw the boy, the motorman rung the gong, shouted, reversed the power, set the brakes, and continued to shout and sound the gong until the child was struck.   He did everything possible to stop the car before it reached the child.   When he first saw the boy, the car was from thirty-five to sixty-five feet from the place where he was struck. An electric car like the one in question, running from twelve to fifteen miles an hour on a down grade of four per cent, can be stopped in seventy-five or eighty feet if everything works favorably. Small children lived at the plaintiff's house; but the motorman, who had worked on the line for several years, had never seen the injured child, or any children, on or near the track at the place where the accident happened, and there was no evidence that children were accustomed to play or had played there.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Eastman, Scammon & Gardner*, for the defendants.

PLUMMER, J.   The jury were instructed, without exception, that there was no evidence of negligence on the part of the defendants except as regarded the conduct of the motorman.   The plaintiff's ward, being too young to exercise care for his own safety, cannot be guilty of contributory negligence.   *Carney* v. *Railway*, 72 N. H. 364.   Therefore, the exceptions to the denial of the defendants' motions for a nonsuit and for the direction of a verdict in their favor present the sole question, whether in the whole case there is any substantial evidence tending to prove that the motorman was negligent at the time of the accident.   *Burnham* v. *Railroad*, 69 N. H. 280.

It is apparent that there is no evidence upon which it could be found that the conduct of the motorman was at fault after he saw the child; for as soon as he saw him, he shouted, rang the gong, reversed the power and set the brakes, and continued shouting and ringing the gong until the child was struck.   He did everything he

could to avoid the accident. When he first saw the child the car was thirty-five to sixty-five feet away, running on a down grade of about four per cent at the rate of twelve to fifteen miles an hour, and it is not contended that a car going at that rate of speed on such a grade can be stopped in less than seventy-five or eighty feet, and at that distance only when everything works favorably; so notwithstanding the motorman did everything in his power to stop the car before it struck the child, it was impossible for him to do so. The testimony also shows that the motorman was not negligent in not discovering the child sooner. It appears that just before he saw him, he saw a little girl in the lower driveway some twenty feet from the electric car track, and rang the gong to give her warning. This demonstrates that he was alert and attentive to his duty at the time and indicates that he was looking ahead of him to the lower driveway; and if the little boy had been in sight sooner, he would have seen him, as he did the little girl. Without doubt, the little boy was sitting or lying down behind the bushes or grass that was by the side of the driveway, and when he rose up or came from behind the bushes or grass the motorman saw him.

The plaintiff claims in her brief that the evidence warranted a finding either that the motorman discovered the child in a place of danger when about 160 feet away, or that, with the car going at the rate it was, he ought to have discovered the child in time to stop. The plaintiff fails to point out any evidence that would warrant any such findings, and no such evidence is in the case. It is not understood to be seriously contended that the jury would be warranted on the evidence in finding that the motorman was negligent in not stopping the car before it struck the child, or that in the exercise of reasonable care he should have seen him sooner, but that he should have been running the car at such a rate of speed that he could have stopped before striking the child, and that upon this ground the jury were warranted in returning a verdict for the plaintiff. There is no evidence presented to show at what rate of speed the car should have been going in order for it to have been stopped after the child was seen and before he was struck, or in thirty-five to sixty-five feet. The plaintiff assumes that, if the car had been going four or five miles an hour, it could have been stopped in time to have averted the accident. Taking that assumption as correct, could it be found that the car should have been run at that rate of speed where the accident occurred? The motorman was running his car in a sparsely settled neighborhood, passing the plaintiff's

house in which small children lived, on a down grade of about four per cent, and approaching a driveway some 130 feet from the house, which was unplanked, unused, and covered with grass, that he could see for a long distance, where he had never seen any children on or near the track, and where, so far as appears, children were not accustomed to play.

The situation disclosed by these facts did not demand such precaution as the plaintiff claims, for the motorman had no reason to apprehend that small children might be in a position of danger at the driveway, or even if they were, that he might not be able to see them in time to prevent an accident. If the place of the accident had been at a blind driveway, planked and in use, situated near a house, in a thickly settled neighborhood where children were accustomed to play, there would be ground for the plaintiff's contention; but with the circumstances as they were, it could not be found that due care required the running of the car at four or five miles an hour, or a little faster than a person would go at a brisk walk. Such a requirement at the place of the accident and at places equally danger- · ous would undoubtedly render the operation of the defendants' railway impracticable. The accident was unavoidable. It was · caused by the unexpected and thoughtless act of a young child for which the defendants were in no way responsible.

*Exceptions sustained: verdict set aside: verdict and judgment for the defendants.*

All concurred.