Hillsborough, }
    June, 1900. }

### CARR v. MANCHESTER ELECTRIC CO.

### SAME v. UNION ELECTRIC CO.

An action for negligence cannot be maintained when the evidence fails to disclose an open, visible connection between the injury and the negligence alleged.

As between himself and his immediate employer, a servant assumes the risk of dangers incident to the service; but if he suffers injury through the joint negligence of his master and a third person, in a suit against the latter the only rule to be applied is that of ordinary care.

Certain evidence considered sufficient to warrant a submission to the jury of the question whether the plaintiff in an action for negligence was in the exercise of ordinary care at the time of injury.

CASE, to recover damages for an injury received by the plaintiff, November 24, 1896, on Marion street, in West Manchester, while in the employ of the Manchester Electric Company as a lamp-trimmer.

The evidence for the plaintiff tended to show that at the time of his injury he had been in their employ since October, 1894, as a trimmer, except the summer of 1895; that his work required him to go over the circuit in the morning to trim the lamps, and again at night to see that they were properly started; that his circuit included about one hundred lamps; that he had trimmed on it for the preceding year; that when he first entered the company's employ he was fully shown how to trim a lamp, and was told that the first thing to do in trimming was to reach up to the top of the lamp and throw a switch to cut the lamp out of the circuit, so as to avoid the danger from the wires of the circuit upon which he was at work coming in contact with live wires; that he was entirely competent to trim lamps, and fully understood the use and purpose of the switch; that when he entered upon his employ-

ment he was instructed in the details of his work, and shown how to do everything connected with it, but received no further instructions thereafter; that early in the morning of the day of the accident it had rained somewhat, and that the day was cold and damp; that at the place of the accident he climbed the pole (which was something over twenty feet in height) upon which the lamp was fixed, and, while reaching for the switch, in some way received an electric shock which caused his injury; that the live wire was caused by the wire of his employers coming in contact with a transformer of the other defendants; that this contact was on another street, was unknown to the plaintiff, and was caused by the joint negligence of both defendants in constructing and maintaining their lines of wire; that it is more dangerous, when there are live wires, to work upon pole lamps in wet weather than in dry, there being no evidence that the plaintiff was ever instructed as to this danger, or that he knew of it, unless such knowledge is to be inferred from his employment.

There was no evidence that the lamp of the plaintiff's employers was defective or out of repair at the time of the accident, or that there was any defect in the pole on which it was placed. About three feet below the lamp was a wooden arm, three inches thick. Five or six months before the accident, this cross-arm had been lowered. At first it was within two or three inches of the top of the pole. Before it was changed, the plaintiff used to sit on the arm to do his work. After it was changed, he stood on it, and had been in the habit of doing so three or four months prior to the accident. There was nothing about the cross-arm that he did not perfectly understand.

The plaintiff's duties as trimmer consisted in cleaning the rods of the lamps, putting in new carbons, and dusting the globes. When the lamp was on top of the pole, he climbed up to it. When it was on a mast-arm, so called, he let it down. On the morning of the accident, he climbed the pole in question. Having reached the cross-arm, he stood upon it, one foot before the other, with his knee slanted against the pole. In this position his face came half way between the top of the hood, so called, and the lower edge. Standing in this position, and balancing himself on the cross-arm, he reached with his left hand by the globe, between the lamp and its metal standards, to get up to the hood-board to throw the switch; and while reaching for the switch, he received a shock causing the injury complained of.

Subject to exception, a witness for the plaintiff was permitted to testify that under certain conditions all the metal on the hood-board, and everything above the top of the pole, could be alive. What such conditions are, or that they existed on the day of the accident, did not appear, unless inferentially.

At the close of the plaintiff's evidence the defendants separately moved for a nonsuit; at the close of all the evidence, that a verdict be directed in their favor; and after the verdict, that it be set aside. All these motions were overruled, and the defendants excepted.

*Burnham, Brown & Warren* and *William H. Drury*, for the plaintiff.

*Oliver E. Branch* and *Joseph W. Fellows*, for the Manchester Electric Company.

*Taggart & Bingham*, for the Union Electric Company.

BLODGETT, C. J. The plaintiff's grounds of complaint against the Manchester Electric Company are (1) that they were negligent in not instructing him as to the increased danger in working upon pole lamps in wet weather, and (2) that they were also negligent in allowing the wires of the two companies to come in contact on Marion street.

The first ground is untenable. The negligence complained of would be immaterial unless it caused the plaintiff's injury. If the alleged enhanced danger to him on account of dampness was not adequately provided for by the cut-off switch, whose office and purpose it is, as he confessedly well knew and understood, to entirely cut out the current of electricity from the lamp, and so render it safe for cleaning and trimming under all conditions, we find no evidence whatever that dampness, if it appreciably existed at the time of his injury, would have rendered· the shock to the plaintiff any different than it was, or that any parts of the mechanism outside the lamp were actually charged at that time. Suppose, however, that they were: it is certainly as likely, in any reasonable view of the evidence, that the plaintiff's shock was received from the charged lamp, the risk of which he assumed, as from the mechanism; and "an action for negligence cannot be maintained when the evidence fails to disclose an open, visible connection between the injury and the negligence alleged, and when the facts proved are equally consistent with a theory of the accident that would discharge the defendants as with one that would charge them." *Deschenes* v. *Railroad*, 69 N. H. 285, 291.

The second ground is untenable also. Knowing, as he admittedly did, the risk of injury from the wires of his employers coming in contact with the wires of other electric companies, and thus becoming charged and alive, the plaintiff, as before stated, manifestly assumed that risk as between himself and his employers; and, moreover, they had guarded him absolutely against that source of

danger by means of the cut-off switch, the use and purpose of which it is admitted he fully understood. Irrespective, therefore, of the question of the plaintiff's own negligence, we are of opinion that the motion of the Manchester Electric Company for a nonsuit should have been granted.

As against the Union Electric Company, the plaintiff assumed no risks of his employment. They stood as strangers to each other, and, as between them, the only rule to be applied is that of ordinary care. This rule required that the plaintiff should make use of such means of protection and safety as were within his control to guard against the risks that were known to, or reasonably to be apprehended by, him from the negligence of the company. Among those risks was that of their wires becoming crossed with those of his employers. But he was not only apprised of that danger and understood it,— he was also equipped with a complete safeguard against it by turning the cut-off switch. It is true he testified that he was attempting to do this when he received the shock, and therefore my brethren are of the opinion that the question whether he exercised ordinary care in his way and manner of doing it was properly left to the determination of the jury. I do not think so. On the contrary, it seems to me that the case discloses no evidence which would justify a finding by the jury of reasonable care on his part. In my opinion, the evidence was fairly susceptible of but two conclusions: First, that the plaintiff attempted to trim the lamp without turning the switch, as he had frequently done before; or, second, that standing in the unnecessary and reckless way he did, " on the west end of the cross-arm, with one foot in front of the other, supporting himself entirely by placing his knee against the pole, and without attempting to protect himself by the use of his right hand, he reached around with his left," by the globe and between the metallic standards of the lamp, to turn the switch, which was on the south side of the lamp, and thereby received the injury for which compensation is sought. And upon either of these conclusions it follows that there can be no recovery against the Union Electric Company, because a person injured by his want of ordinary care, or by the joint operation of his own and another's negligence, is remediless. *Nashua Iron and Steel Co. v. Railroad*, 62 N. H. 159, 161, 162.

The conditions mentioned in the question to which exception was taken evidently referred to dampness, and the exception must therefore be overruled.

*Judgment for the Manchester Electric Company, and against the Union Electric Company.*

YOUNG, J., did not sit: the others concurred as to the Manchester Electric Company.