Coös, April 1, 1902.

## LAPELLE v. INTERNATIONAL PAPER CO.

In an action for negligence against an employer, certain evidence deemed sufficient to warrant a submission to the jury of the question whether the injuries complained of resulted from the defendants' failure to give necessary instruction and information regarding the dangers pertaining to work which the plaintiff was directed to perform.

A servant is chargeable only with the risk of dangers of which he is informed, or which ordinary care would disclose to him.

CASE, by an employee against his employers, for negligence in the failure to properly instruct him and to inform him of the dangers pertaining to his work. Trial by jury and verdict for the plaintiff. Transferred from the November term, 1901, of the superior court by *Wallace*, C. J.

The plaintiff, at the time of his employment by the defendants and of his injury, was nearly eighteen years of age, and was possessed of all his faculties. He had never worked in a mill, and had no knowledge of machinery. The defendants knew of his inexperience. They employed him and set him to work in one of their pulp mills, first in sweeping floors a part of a day, and then four days in removing pulp with a wheelbarrow from the machines by which it was made to other parts of the mill. The fifth or sixth day he worked with the night help, and near midnight was called on by the boss of the room, who was operating one of the pulp machines, to take charge of it while he ate his lunch. The plaintiff complied, and was injured while so employed.

The machine consisted of a frame-work some six feet wide, containing a series of rolls over and around which ran an endless belt of felt, upon which the pulp suspended in water was deposited and by which it was carried along (the water escaping during the passage) to a roll at the forward end of the machine, to which the pulp adhered and about which it was wound, forming a sheet when removed from the roll. This roll (designated 1, for convenience of reference) was eighteen inches in diameter, and its axis was some three and a half feet above the floor. There was another roll (2), twelve inches in diameter, directly below it, the axes of the two being in the same perpendicular plane, and being so located with respect to each other that the rolls nearly touched. At a considerable distance back of roll 2 there was a third roll (3), seven inches in diameter, so located that its axis was nearly in the horizontal plane extending through the lower surface of roll 2. There was a fourth roll (4), seven inches in diameter, situated below roll 3 and forward of it, perhaps a third of the distance between it and roll 2. The felt passed between rolls 1 and 2, then back around roll 3, then forward around roll 4, and then back to the rear of the machine. Roll 1 made about fourteen revolutions a minute, and roll 3 about thirty-six revolutions. When the pulp had acquired a sufficient thickness on roll 1, the operator cut it lengthwise of the roll by means of a knife operated by a lever, and the sheet then fell forward upon a table provided for the purpose, from which it was removed to a wheelbarrow and taken away. A person standing in front of the machine could not see roll 3, but could see it if he stooped or got down on his hands and knees so as to bring his line of vision below the table and other obstructions. Pulp was liable to pass between rolls 1 and 2, and adhere to and clog roll 3. This happened three or four to twenty-five or more times a day, depending somewhat upon the skill of the operator. When it happened it was necessary to clean the pulp from roll 3. If this was not done, the machine would not do its work properly. It was the duty of the person who operated the machine to clean the roll whenever it became clogged in this way. The proper way to do it was to wash the pulp off by turning a stream of water upon the roll; and the machine was provided with a hose connected with a water supply for the purpose.

It took a minute or a minute and a half for a sheet of pulp to accumulate on roll 1; and this was about the length of time that intervened between two successive removals of sheets when the machine was in operation. The sheets weighed about thirty-five pounds each.

The plaintiff was called to operate the machine, as before stated, by the boss of the room. The plaintiff testified that no

instructions whatever were given him regarding the method of operation. The defendants' superintendent testified that he showed the plaintiff how to clean roll 3 with water the evening before he was injured, but did not tell him of the danger of getting caught, nor of the danger incident to cleaning the rolls with the hand or a stick. There was corroborative and adverse testimony on this point. There was testimony tending to show that the plaintiff, while waiting for pulp to wheel away, observed the manner in which the machine was operated, and that he cut the sheets of pulp from roll 1 several times prior to the night when he was injured. The plaintiff testified, subject to exception, that he never saw any one clean roll 3 with a hose, but did see the brother of the boss clean it twice by getting down on his hands and knees, crawling under the table, and using a pointed stick about a foot long, which was kept near at hand. It appeared that this man did clean the roll in that way ; and there was evidence tending to show that it was his regular way of doing it, and that it could be done more expeditiously in that way. The boss testified that he saw his brother use a stick on one occasion, and then told him to use the hose and that it was dangerous to use a stick. The plaintiff testified that he did not know there was a hose connected with the machine for cleaning the rolls, nor that it was dangerous to use a stick. If a stick was used, it was safer to confine its contact with the roll to the lower portion of the same, as the direction of the roll's motion would then tend to throw the stick out, instead of drawing it in as the motion would have a tendency to do if the contact was near the top of the roll.

When the pulp on roll 1 became of the proper thickness, the plaintiff cut it, and the sheet, instead of falling on the table, passed between rolls 1 and 2, and wound around roll 3. He thought this might break the machine, and knew that it was his duty to remove the pulp from the roll. He attempted to do it by getting down on his hands and knees, crawling under the table, and using the stick as he had seen the brother of the boss do. There was an electric light over the front part of the machine, but it was pretty dark underneath. The plaintiff said he could see that the rolls were revolving and could see the pulp on roll 3 "a little." In attempting to remove the pulp with the stick he was caught between the roll and the felt, and was injured.

The defendants' motion for the direction of a verdict in their favor was denied, subject to exception.

*Daley & Goss* and *Crawford D. Hening*, for the plaintiff.

*Chamberlin & Rich* and *Daniel J. McGillicuddy* (of Maine), for the defendants.

CHASE, J.   There was sufficient competent testimony tending
to prove the negligence alleged to warrant the submission of the
question to the jury.   The defendants, knowing that the plaintiff
was a young and inexperienced man having no knowledge of
machinery, assigned him to the performance of a duty, one of the
probable incidents of which was the cleaning of pulp from roll 3,
without — if the plaintiff's testimony is believed — giving him any
information whatever how to perform the service.   It is not a
matter of common knowledge that the proper way to clean the
roll is by throwing a stream of water upon it through a hose ; nor
would this method be apparent to an ordinary inexperienced per-
son.   It would be natural for such a person, who was not aware
of the danger incident to that course, to apply force directly to
the pulp by the hands or some instrument held in them.   There
was evidence that the defendants knew that persons who operated
the machine were liable to use a stick.   The person who represented
the defendants in assigning the plaintiff to this work, and upon
whom the duty of giving him instructions devolved, if any were
necessary (*Jaques* v. *Company,* 66 N. H. 482), knew this fact, for
he had seen his brother clean the roll in that way ; and the defend-
ants are chargeable with his knowledge.   The testimony relating
to this matter, to which the defendants excepted, was relevant to
the issue and competent.   The fact that the boss, when he saw
his brother using the stick, directed him to use water instead and
told him it was dangerous to use a stick, did not lessen the force
of the circumstance as notice of the necessity for instruction and
caution to employees; it did not affect the competency of the
testimony.   All this evidence tended to prove that it was the duty
of the defendants to instruct the plaintiff how to clean the roll
and to inform him of the dangers attending the use of a stick for
the purpose.   *Bennett* v. *Warren,* 70 N. H. 564.   The testimony
relating to the question whether they gave him instructions on
the subject was conflicting.   It was also a question whether the
instructions were sufficient which, according to their testimony,
they gave.   These matters required the submission of the case to
the jury.

There was testimony tending to prove that the plaintiff did not
know of and appreciate the danger to which he was exposed in
using the stick to clean the roll, and was not chargeable with such
knowledge and appreciation.   He testified that he did not know .
of the danger; and it cannot be said as a matter of law that it
was, or reasonably ought to have been, obvious to a man of his
age and knowledge.   He had seen another employee use the stick
on two occasions with safety.   He might reasonably infer that
this was the proper way.   If his testimony is believed, he knew of

no other way. It was necessary that he should act quickly, for the machine was running, and only a minute and a half intervened between the completion of two sheets of pulp. The law does not charge him with the risk of the perils to which he was subjected unless he was informed of them, or would have learned of them by an exercise of ordinary care. *Henderson* v. *Williams*, 66 N. H. 405. It is not claimed that he was informed of them, and the testimony relating to the question of his care was not so uniform and convincing in favor of the defendants as to justify the granting of their motion. *Lintott* v. *Company*, 69 N. H. 628.

*Exception overruled.*

All concurred.