Grafton,
Feb. 3, 1903.

### Boyce, *Adm'r, v.* Johnson.

A person mentally deficient is bound to use in a position of danger such reason as he possesses, and cannot recover for an injury which would have been avoided by a due exercise of his limited faculties.

A servant assumes the risk of only such dangers of his employment as are known to him, or which ordinary care would disclose.

Evidence that a laborer of less than ordinary intelligence, while working in an apparently safe place and faithfully observing the instructions given him, suffered injury from a danger deceptive in character, not readily discernible from his post of duty, and concerning which he had not been warned, warrants a submission of the question whether the peril of his situation was known to him, or was discoverable by the exercise of the care of which he was capable.

Case, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the May term, 1902, of the superior court by *Pike,* J.

The defendant owned and operated a sawmill. From the back of the mill, a slip extended at a steep incline to a pond where logs were floated. Each log was drawn to the sawmill floor by hooking a small chain attached to one end of the log into a link of an endless chain which passed over a wheel in the mill, and thence under and over the slip.

. The plaintiff's evidence tended to prove the following facts: At

the time of the accident (December 27, 1901) the plaintiff's intestate was seventeen years old. He was employed by the defendant in December, 1900, as a common laborer, and worked about two months upon the slip. He was again employed in December, 1901, and had worked three days when he was injured. Prior to his employment by the defendant in 1900, he had been engaged in another sawmill, at work similar to that he was performing when injured. He possessed less than ordinary intelligence, and was not as well developed mentally as the average boy of his age. To a certain extent he understood things if they were called to his attention; but he did not comprehend them as boys of his age generally do, and forgot instructions quickly. Because of this, those with and under whom he was at work felt constrained to repeatedly warn him of the dangers connected with his employment. Upon such occasions he would laugh and hold up his hands, and the instructions or warnings made but little impression upon him. His duty required him to work at the foot of the slip, and to adjust the small chains around the logs and hook them into links of the endless chain. His instructions were, (1) not to hitch a log into the endless chain nearer than four feet to the log ahead, and (2) not to hitch on at all until the log ahead was landed on the sawmill floor. He was also told that the hauling-in chain might unhook from the endless chain, or that the chain might slip from the log. He was not instructed that in drawing in the logs by the endless chain the forward end of the log would sometimes be pulled down so as to appear from the bottom of the slip to be landed, when in fact it was not landed. Some of the links in the endless chain had become broken, and were replaced with larger links of a D shape. The chains were exhibited for the purpose of showing that the shallow hook of the smaller chain would be more likely to unhook from the D links than from the ordinary links of the endless chain.

On the day of the accident the plaintiff's intestate hitched a peeled hemlock log, which was about fourteen feet long and eighteen inches in diameter, to a link of the endless chain, and stepped aside while the log was being drawn to the mill above, remaining in this position until the log appeared, from his position at the foot of the slip, to be landed on the mill floor. He then walked back and attempted to adjust a chain to another log. While he was so engaged, the hauling-in chain of the first log became unhooked from the endless chain, the log tipped backward, slid rapidly down the slip, and injured him so that he died soon afterward. The plaintiff's evidence also tended to prove that the chains and hooks were unsuitable in certain particulars, and that it was a frequent occurrence for logs to become unhooked while

on the way up the slip and when being pulled in to the floor above.

The defendant's motions for a nonsuit and to direct a verdict in his favor were denied, subject to exception.

*Shannon & Young* and *Burleigh & Adams*, for the plaintiff.

*Alvin F. Wentworth*, *Smith & Smith*, and *Jewell, Owen & Veazey*, for the defendant.

PARSONS, C. J. Logs were drawn from the defendant's pond to the floor of the mill, over a steep incline called a slip, by an endless chain kept in motion by the machinery of the mill. The plaintiff's intestate was employed to attach these logs to the endless chain. This was done by securing a smaller chain around the log and inserting the hook of the small chain in one of the links of the other. The place for this work was at the foot of the slip. Either from the character of the chains and hooks furnished, the construction of the slip, or as a necessary peril of the work, logs frequently became loose in their passage up the slip, and slid down. The possibility of injury from a log coming back in this way was one of the perils of the work as it was conducted. So far as this danger was known, or could be ascertained and guarded against by ordinary care, the person doing the work assumed the risk. *O'Hare* v. *Company*, 71 N. H. 104. The plaintiff's intestate, if of less than average intelligence, was bound to use the reason he did possess; and if by the due exercise of his physical and mental powers he could have avoided the injury, this action cannot be maintained. *Bresnehan* v. *Gove*, 71 N. H. 236, 239. But whether of average or of deficient intelligence, he was not bound to protect himself from unknown, concealed dangers. "The law does not charge him with the risk of the perils to which he was subjected unless he was informed of them, or would have learned of them by an exercise of ordinary care." *Lapelle* v. *Paper Co.*, 71 N. H. 346, 350. The danger of being struck by a log coming back could be avoided by remaining in a place of safety until the log was landed upon the mill floor. If the injury resulted from a mere failure to observe this precaution, it may be that even without instructions, or in spite of the somewhat contradictory instructions given the deceased and his deficient mental equipment, such want of care would be fatal to this action.

The decease was instructed, among other things, not to hitch on a log until the log ahead was landed on the mill floor. As the logs were drawn upon the floor of the mill, the forward end of the log would sometimes be drawn down so as to appear to one at the

foot of the slip to be landed, when it was not. At the time in question the deceased had attached a log to the chain, and stood aside until the log appeared from his position to be landed. He then attempted to attach another log, when the first became unhooked, slid back, and killed him. Upon this evidence the deceased was not in fault unless he knew the fact as to which he was not instructed: that the log might appear from his position at the foot of the slip to be landed before it was. It cannot be held as matter of law that he assumed this danger of which he was not instructed, unless he knew or ought to have known of it.

Assuming that if he knew the danger he had intelligence enough to protect himself, the case was properly submitted to the jury if sufficient evidence was offered to sustain the burden resting upon the plaintiff of proving that the deceased did not know the danger and in the exercise of ordinary care ought not to have known of it. *Burnham* v. *Railroad*, 68 N. H. 567. Direct evidence to the fact was not essential. Like any other material fact, it might be inferred from other facts proved. *Burnham* v. *Railroad*, 69 N. H. 280, 284. The manner in which, or the reason why, in some cases to one at the foot of the slip a log might appear to be landed on the floor above, when it was not, is not fully stated. It is unnecessary to speculate upon the subject. The evidence tended to show that the work at the foot of the slip at certain times, while apparently safe, was in fact dangerous. The omission of instruction upon this point, in connection with the instruction given, had a tendency to create the belief that as soon as the log appeared to be landed the work at the foot of the slip could safely be continued. The evidence as to the accident also tends to prove that the deceased was faithfully observing the instructions given him, in ignorance of the special danger which resulted in his death. From the fact that the appearance of the log was deceptive to one at the foot of the slip, it may be inferred that the occasional action of the chain in drawing down the end of the log, by which the deceptive condition was produced, was not observable from the place where the deceased worked. It does not appear that his experience in mill work should, or naturally would, have given him the necessary information. It is at least extremely doubtful whether an inexperienced person of average intelligence would have suspected this special danger without instruction. The deceased's want of average intelligence was additional evidence upon the question whether he knew or ought to have known the danger. To what extent his powers of observation and reason were affected by the matters detailed in evidence, was necessarily a question of fact. It would not be unreasonable to find upon the evidence disclosed by the case, that a

person of such intelligence as the intestate might be found to possess, of no greater experience than he is shown to have had, in the absence of instruction, did not know, and ought not to have known, the special danger causing the injury. *Demars* v. *Company*, 67 N. H. 404. The question whether the deceased was in fault for not knowing, or protecting himself from the danger, was therefore properly submitted to the jury. The danger of being deceived as to the position of the log upon the mill floor might upon the evidence be found to have been a concealed peril, as to which it was the duty of the master to warn an inexperienced employee. *Lapelle* v. *Paper Co.*, *supra*; *Bennett* v. *Warren*, 70 N. H. 564.

The case was properly drawn in compliance with the third rule of court. 71 N. H. 669. As the testimony has not been transferred by the superior court, the extracts therefrom printed by the defendant have not been examined.

*Exceptions overruled.*

CHASE, J., was absent: the others concurred.