Hillsborough, }
June 7, 1904. }

ST. JEAN, *Adm'r,* v. TOLLES *& a.*

Certain evidence deemed insufficient to warrant a finding that a servant engaged in operating a circular saw was ignorant of the special danger which caused his injury.

CASE, for negligently causing the death of the plaintiff's intestate, George Archambeault, by failing to properly instruct him in regard to the use of a machine upon which he was set at work in the defendants' box factory. Trial by jury and verdict for the plaintiff. At the close of the plaintiff's evidence the defendants' motion that a verdict be directed in their favor was denied, subject to exception. Transferred from the September term, 1903, of the superior court by *Wallace,* C. J.

The plaintiff's evidence tended to prove the following facts : At the time of his injury the plaintiff's intestate was fifteen years and seven months old. He possessed all his faculties and was very intelligent and quick to learn. The machine upon which he was set to work consisted of a small circular saw called a stripper,

located on the right-hand side of a bench and used to saw off the edges of boards to render them straight, and of an appliance known as a matcher, attached to the left side of the bench and used to tongue and groove the boards after their edges had been straightened. Archambeault ran the matcher, and one Sylvester operated the stripper. The decedent had run a matcher in another mill from October, 1901, to March, 1902, and for the defendants from about April 1 to June 14, 1902. While thus employed by the defendants, he improved every opportunity to learn to run the stripper, and had operated it for a few minutes on ten or twelve occasions during temporary absences of Sylvester. Learning that Sylvester was to be absent for a few days, the decedent applied for the job of running the stripper during the time, and said, in reply to an inquiry, that he thought he could operate it. The defendants' foreman consented, and by his direction Sylvester told the decedent to stand one side of the saw while running it, to poke the edgings away with a stick when any were collected on the table, and to go easy when he was at work upon cross-grained lumber, as a different course would stop the saw. No other instructions were given. The decedent ran the stripper for a day and a half without trouble and apparently in a proper manner. Just before his injury he was observed operating the machine in the customary way, and the next moment he was seen about four feet from it, with both hands pressed upon his abdomen. In response to an immediate inquiry, he said that a piece of edging had been thrown from the saw and had penetrated his bowels. He died from his injury two days later. If edgings were allowed to accumulate on the bench, there was danger that they would be caught by the saw and be thrown back with great force against the operator. They were often thrown back, and the way to avoid being struck by them was to stand at one side of the saw.

*Hamblett & Spring* and *Doyle & Lucier*, for the plaintiff.

*Oliver E. Branch* and *Ivory C. Eaton*, for the defendants.

WALKER, J. The sole contention of the plaintiff is, that it was competent for the jury to find that the defendants were negligent in not instructing Archambeault that edgings coming in contact with the saw-teeth in their swift upward movement would be hurled backward with great force in the direction of the operator. Since the boy was struck by an edging thrown in the way described, it is argued that the defendants' omission to give him instructions as to the danger he incurred, so that he could appreciate the same, was the proximate cause of the injury. If it were

conceded that he did not have, or could not reasonably be expected to have had, knowledge that edgings might be caught by the saw and hurled backward, the plaintiff's position might be sound. Upon this theory it might not be important to ascertain whether the edging that struck Archambeault was caught by the saw from edgings allowed to accumulate on the bench, or whether it came in contact with the saw in some other way, while he was engaged in operating the machine. It might be said that as to him the danger was a concealed one, which the defendants ought to have disclosed to him.

But it is unnecessary to argue the proposition that the defendants were under no obligation to inform the deceased of dangers of which he had adequate knowledge. The question, therefore, is whether upon the plaintiff's evidence the jury were justified in finding that Archambeault did not know that edgings, when caught by the saw, were liable to be thrown over it and to hit him while operating the machine. It is evident that he was not ignorant of the general operation of the matching and stripping machine. Although less than sixteen years old, he had run a matcher in another shop for about four months, and in the defendants' shop for two months and a half. During this time he had daily seen the stripper in operation at his side, and on several occasions had run the stripper for a few minutes at a time. He was a bright, intelligent boy, and for a day and a half after he went to work on the stripper he had no difficulty with the machine and did his work well. In addition to the information he thus obtained from practical experience and observation, he was instructed by a competent agent of the defendants not to stand in front of the saw, but at one side of it, and when edgings collected on the saw-table to poke them away with a stick and not with his hand. The case also discloses the fact that in doing this kind of work it very often happens that edgings fly back from the saw. In view of his experience and intelligence and of the obviously frequent occurrences of that character, which common knowledge, as well as the reported fact, confirms, it is highly improbable, in the absence of positive evidence, that he was ignorant of the special danger he incurred at the time when he received his injury. It is inconceivable that he was ignorant that edgings might be thrown toward him, and that if he happened to be within their range he would be hit by them and perhaps injured. Reasonable men could not find from the evidence that he was ignorant of the operation of the physical forces which resulted in his fatal injury.

*Hanson* v. *Company*, 162 Mass. 187, cited by the plaintiff, is not in point, for the plaintiff in that case testified that he did not know of this special danger connected with the operation of a circular

saw. Moreover, it is said in *Tenanty* v. *Company*, 170 Mass. 323, 325, that "the doctrine of that case is not to be extended."

The defendants' motion for a verdict should have been granted.

*Exception sustained.*

All concurred.