Rockingham,
Nov. 7, 1905.

## HAMEL v. NEWMARKET MANUFACTURING CO.

A servant who has no actual knowledge of a danger of his employment cannot be held to have assumed the risk incident thereto, unless it conclusively appears that he would have acquired the information necessary for his protection by the exercise of ordinary care.

When there is competent evidence to warrant its submission, the question whether negligence of a fellow-servant was the sole cause, a concurrent cause, or merely the occasion of the plaintiff's injury is one of fact for the jury.

If injury to a servant results from the coöperating negligence of a fellow-servant and the master, the latter is liable therefor.

CASE, for personal injuries alleged to have been caused by the defendants' negligence. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1905, of the superior court by *Wallace*, C. J., on the defendants' exceptions to the denial of their motions for a nonsuit and the direction of a verdict in their favor.

The evidence tended to prove the following facts: The plaintiff, a man of ordinary intelligence, was employed as a helper in the defendants' machine shop, but was without experience in repairing shafting. January 28, 1904, a line of shafting in the defendants' boiler-house broke about four feet from one end. The line was about forty feet long and was suspended about six feet above the boilers by J hangers bolted to the roof. The defendants' master mechanic, who had charge of all machinery and the men employed to repair it, directed Kelley, a machinist, to take the plaintiff as helper and repair the break after the mill had shut down. In order to make the repairs, it was necessary to separate the broken ends of the shafting and join them with a coupling. Kelley and the plaintiff were unable to push the long piece through the boxes, because it was worn with turning and was gummed with oil. They cleaned the shafting, and being still unable to move it, they removed the caps that held it in the boxes. They then separated the broken ends, screwed a coupling to the short piece, pushed the long piece back, and inserted its end in the coupling. By Kelley's direction, the plaintiff proceeded to screw the long piece into the coupling with pipe-tongs, while Kelley held a light; and at about the third turn, the shafting rolled out of the boxes and fell upon the plaintiff, causing the injuries complained of. If the caps had been replaced after the end of the long piece was inserted in the coupling,

or if they had been merely loosened, the accident could not have happened. They were not replaced because Kelley thought the shafting could be safely turned without them. The shafting fell because it was out of line, or because there was some trouble with the box in the hanger farthest from the point where the men were at work. The plaintiff was free from fault at the time he was injured. Neither he nor Kelley supposed there was danger in their method of doing the work. Some one should have been ordered to watch the shafting while the others worked upon it, or enough men should have been employed to push it through the boxes without removing the caps; and if either of these precautions had been taken, the accident would not have happened.

*Eastman, Scammon & Gardner* and *Arthur L. Churchill*, for the plaintiff.

*John Kivel* and *George T. Hughes*, for the defendants.

PARSONS, C. J. When a servant brings an action against his employer upon the ground of negligence, to recover for an injury sustained in the course of his employment, he must show, to maintain such an action, that his master failed to perform a duty the law imposed on him for his benefit, and that the failure to perform it was the legal cause of his injury.

One particular in which the plaintiff says the defendants failed to perform their duty toward him was their failure to inform him of the danger to which he was subjected in attempting to turn the shaft while it laid in the boxes of the hangers with the caps removed—a danger which he says he did not appreciate, and the risks attending which he consequently did not assume as a matter of law by his contract of service. If there was evidence from which the jury might find the facts thus alleged, the defendants' motions were properly denied, whether the defendants were negligent in other respects or not.

Whether or not the defendants, in the exercise of ordinary care, ought to have informed the plaintiff of the danger to which he was subjected, depends in part upon the question whether they ought to have anticipated that Kelley would remove the caps; and that is a question of fact to be established, like other facts, by evidence. The fact that the shafting could have been repaired with the caps in place is evidence from which it could be found that the defendants were not bound to anticipate their removal, but it is not conclusive of that question. It cannot be said from that fact alone, when the location and condition of the shafting are considered, that an ordinary man

who was familiar with it would not have anticipated that Kelley would remove the caps. So it cannot be said that it conclusively appears that the defendants ought not to have anticipated that he would remove them. It might be found, therefore, that the defendants ought to have anticipated that Kelley would remove the caps; consequently, it might be found that they should have notified the plaintiff of the danger incident to turning the shafting after their removal. But the defendants contend that, even if it could be found that the ordinary man would have notified the plaintiff of that danger, it cannot be found they were in fault, because it conclusively appears that the plaintiff would have known of the danger if he had used ordinary care to inform himself in respect to it. If he ought to have known of that danger, the law imposed no duty in respect to it upon the defendants for his benefit. Notwithstanding the plaintiff knew he would be injured if the shafting fell when he was at work, it does not follow that he ought to have known it was liable to fall if he turned it in the way he did after the caps were removed. It was lying in the boxes in which it was designed to turn. The plaintiff was unskilled in that kind of work, he was turning the shafting slowly, and there was nothing about the work or the way of doing it calculated to call the attention of such a man to the fact that the shafting was liable to roll out of the hangers if he continued to turn it. Upon these facts it does not conclusively appear that he was in fault for not knowing of the danger to which he was exposed, or, in other words, that he assumed the risk of his injury; for when, as in this case, it appears that the plaintiff was not in fact aware of the danger to which he was exposed, he will not be held to have assumed the risk incident thereto unless it clearly appears that he would have known of the danger and appreciated the risk if he had used ordinary care to inform himself in relation to it. *Miller* v. *Railroad, ante, p.* 330; *Stevens* v. *Company, ante, p.* 159; *Kasjeta* v. *Company, ante, p.* 22; *Murphy* v. *Railway, ante, p.* 18; *St. Jean* v. *Tolles,* 72 N. H. 587; *English* v. *Amidon,* 72 N. H. 301; *Slack* v. *Carter,* 72 N. H. 267; *Galvin* v. *Pierce,* 72 N. H. 79; *Boyce* v. *Johnson,* 72 N. H. 41; *Olney* v. *Railroad,* 71 N. H. 427; *Lapelle* v. *Company,* 71 N. H. 346; *McLaine* v. *Company,* 71 N. H. 294; *Thompson* v. *Bartlett,* 71 N. H. 174; *Sanders* v. *Company,* 70 N. H. 624; *Edwards* v. *Tilton Mills,* 70 N. H. 574; *Bennett* v. *Warren,* 70 N. H. 564; *Morrison* v. *Fibre Co.,* 70 N. H. 406; *Story* v. *Railroad,* 70 N. H. 364; *Carr* v. *Electric Co.,* 70 N. H. 308; *Whitcher* v. *Railroad,* 70 N. H. 242; *Leazotte* v. *Railroad,* 70 N. H. 5; *Lintott* v. *Company,* 69 N. H. 628.

The defendants contend that Kelley was negligent when he

removed the caps, and that it conclusively appears that his negligence in that respect was the legal cause of the plaintiff's injury. Whether that was the sole cause, one of the concurring causes, or only the occasion of the plaintiff's injury is a question of fact. *Ela* v. *Cable Co.*, 71 N. H. 1. Since it could be found that the plaintiff should have been instructed in respect to the danger, and that if that had been done the accident would not have happened, there was evidence to sustain the verdict, even if it is conceded that Kelley was negligent and that his negligence contributed to cause the plaintiff's injury. A servant who is injured by the concurrent negligence of his master and a fellow-servant may recover from either, provided he was himself without fault. *Matthews* v. *Clough*, 70 N. H. 600.

As there was evidence of a breach of the master's non-delegable duty to instruct the plaintiff as to the danger of the work, as a cause of the accident sufficient to authorize the submission of the case to the jury, it is not material to inquire, in the absence of any exceptions raising the question, whether the alleged negligence of the master mechanic in assigning so small a number of men to the work was the negligence of a fellow-servant, as argued by the defendants, or a breach of the master's duty to furnish sufficient instrumentalities, as claimed by the plaintiff. If the defendants were found to be right in their contention on this point, the exceptions to the denial of the motions for a nonsuit and to direct a verdict could not be sustained.

Although there was evidence from which it could be found that the defendants made a settlement with the plaintiff before he brought this suit, the jury have found that no settlement was made, and there was evidence to sustain their finding. As the plaintiff had not settled with the defendants, there was no contract to be rescinded, and there could be nothing in his hands which had been paid to him in pursuance of it, and which it was incumbent upon him to return before a rescission.

*Exceptions overruled.*

All concurred.