- Coös,
Feb. 4, 1908.

## DISALETS *v.* INTERNATIONAL PAPER CO.

A master who is aware of his servant's ignorance is bound to instruct him as to the proper method of doing dangerous work and to warn him as to the special hazard attendant upon the course he is likely to adopt if uninstructed.

A master who provides improper appliances is liable to an ignorant servant who is injured while using them by the direction of a fellow-servant.

In an action to recover for injuries sustained by a boy eighteen years old while working about dangerous machinery, the plaintiff's age may properly be considered by the jury upon the question of appreciation of the risk.

Where the justices sitting in a case are equally divided in opinion upon a question of law arising on exception, the ruling of the superior court stands.

CASE, for personal injuries suffered by the plaintiff by having his hand and arm drawn in between the calender rolls of a paper machine, while in the employ of the defendant in its mill at Berlin. Trial by jury and verdict for the plaintiff. Transferred from the December term, 1906, of the superior court by *Stone*, J.

The plaintiff's evidence tended to prove the following facts: For more than a year the plaintiff had worked as fourth hand on the machine at which he was injured. It was one of his duties as fourth hand to oil the calender rolls of that machine while they were in motion, and he had performed that duty ten or twelve times a day during the entire term of his employment. It was customary to promote the fourth hand to the position of third hand. While employed as fourth hand the plaintiff had an opportunity to observe the third hand at work, and he had applied for promotion to that position and considered himself competent to do the work incumbent upon him, if promoted. It was not until the night of the accident, however, that he was given an opportunity to work as third hand, and he had been engaged in this capacity for about two hours when he received his injury.

The calender rolls consist of a " stack," ten or eleven feet high, comprising eleven metal cylinders, placed one above the other, the power being attached to the bottom roll, the others revolving by their own weight. The two lower rolls are composed of cast iron faced with steel and are much larger than the others, except the top roll, which at the time of the accident was chained high up above the stack and was not in use. The smallest rolls are ten inches in diameter and weigh 1,800 pounds each. The calender rolls when revolving are hot and are used for the purpose of putting the finish on the paper, which passes alternately in and out of the rolls, guided from one to the other by means of a piece of iron, bladelike in appearance, and known as a feed. There is a foot-board in front of the stack and about three or three and a half feet from the floor, so situated that a person standing upon it and facing the calenders has a clear and unobstructed view of the stack, every other roll being free from paper and in plain sight.

After the plaintiff had been working for about two hours on the night of the accident there occurred what is known as a break in the paper. This break caused the paper to wind around the rolls, and the plaintiff, knowing that it was his duty as third hand to

assist in removing from the rolls the paper which had thus accumulated, asked the machine-tender for a knife with which to perform this task; but the machine-tender, not having a knife in his possession, pointed to a file which he was accustomed to use for a similar purpose. This file was not an instrument furnished by the defendant company, but one which the machine-tender himself had used for his own convenience or protection, as other men furnished their own jack-knives and used them. The plaintiff, taking this file and mounting the foot-board, attempted to remove the paper, and while so engaged caught his hand in the revolving rolls and was drawn in " as far as between the hand and elbow."

When a break occurs, the proper way ordinarily to get the paper off the roll is to use an appliance called a feed, or when it cannot be done in that way to use a jack-knife, by which the paper can be cut and removed; but in using a knife a quick slash should be given on the bottom of the roll turning toward the workman, to avoid having his hand drawn in between the rolls. A file is a dangerous tool to employ for this purpose unless the workman understands how to use it, but one had been so used by the third hands in the defendant's mill. When the plaintiff was employed as third hand on the night of the accident, he received no instructions as to how the work should be done and no warning as to the dangers incident to it. While working as fourth hand, he had seen the men go to the rolls when there was a break, taking knives with them, but on those occasions his duties were such that he had no opportunity of observing just how they did the work. When the machine-tender, Caird, pointed out the file, the plaintiff did not know it was not a proper tool to use for removing the paper. He struck the paper about the middle of the roll, instead of at the bottom, when his hand was caught, thinking that was the most convenient place.

The defendant's motions for a nonsuit and for the direction of a verdict in its favor were denied, subject to exception. The defendant excepted to the refusal of the court to charge the jury that the fact that the plaintiff was eighteen and a half years old should not be considered upon the question of his appreciation of the risk, to the instruction that " mere knowledge of the danger will not preclude the plaintiff from recovering unless he appreciates the risk of the danger," and also to the court's refusal to instruct the jury that Caird, in telling the plaintiff to use the file in cleaning the roll, did not represent the defendant corporation.

There was evidence that the calender stack did not have a friction clutch, a device by means of which the motion of the rolls could be stopped in a few seconds, that other similar machines in the same mill were supplied with such clutches, and that at the

time of the plaintiff's injury the machine could not be stopped for several minutes, or until the power could be shut off at the engine. The defendant excepted to the admission of this evidence, and also to the following argument of the plaintiff's counsel: " If this machine had had a friction clutch, and with it the machine could have been stopped in six seconds, I claim this boy would not have lost more than a finger. The evidence shows you that the machine could have been stopped in six seconds. Think of that, as compared with ten minutes of agony the boy endured. . . . I claim here is evidence of defective machinery. It was not reasonably safe; and if it had been equipped with a friction clutch, this boy's arm might have been saved, even though his fingers were severed."

*Sullivan & Daley* and *Enoch Foster* (of Maine), for the plaintiff.

*Drew, Jordan, Shurtleff & Morris* and *Rich & Marble*, for the defendant.

WALKER, J.   The defendant's motions for a nonsuit and for a verdict were properly denied.   The plaintiff was properly allowed to introduce evidence tending to show that it required some degree of skill to safely remove the paper that accumulated on the rolls when there was a break, and that observation of how it was done by those who had had experience in the work, or instruction by competent persons, was reasonably necessary before a person of the plaintiff's age, understanding, and mental acuteness would discover the proper and safe way of doing the work. The evidence also authorized the inference that the plaintiff had had no opportunity for such observation, and that he had received no instruction how to proceed.   The jury were warranted in finding, also, that he did not in fact know that there was a safer method than the one he adopted, and that the defendant ought to have known that the plaintiff did not know how to do the work in a safe manner and did not understand that he was adopting a specially dangerous method.   Upon the assumption that these facts existed, it became the legal duty of the defendant to instruct the plaintiff, whom it directed to do the work of a third hand, how to do the work and to warn him of the danger of doing it in the way he was likely to do it if uninstructed. The fact that the plaintiff knew that if he allowed his hand to be drawn in between the rolls he would suffer injury is not important. The gist of the plaintiff's case is that he did not know and appreciate the peculiar and extra hazard of doing the work in the way he did it.   He was directed to do work without instructions which

could be done in a reasonably safe way, but which was attended with increased hazard if done in some other way; to discover the safe way skill was required; hence the defendant ought to have instructed him. In this respect the case differs materially from *Hicks* v. *Paper Co.*, *ante*, 154, in which it was held that there was no evidence that special skill was required for one to know and appreciate the danger of doing what Hicks attempted to do. And it is there said ( *p.* 157): "If there was special danger in the process not apparent to the observation of an unskilled workman, or if special skill was required to enable one to do the work in safety, the defendants' failure to warn or instruct the plaintiff might be found to be the cause of the injury."

There was no error in the refusal of the court to charge that Caird was acting as the plaintiff's fellow-servant when he told him to take the file to clean the paper from the roll. There was evidence that the use of a file for that purpose, though it was dangerous, was not an uncommon occurrence in the defendant's mill; and the jury might have found from the evidence that its use in that way was known to, and ratified by, the defendant; in effect, that it was furnished by the defendant as a proper tool for that use, so far as the plaintiff was concerned. Upon this view of the evidence, it would be immaterial what relation Caird sustained to the plaintiff when he directed him to use the file. He used the instrument which the defendant provided, or which the defendant permitted to be used in its mill, without knowing it was a dangerous tool to be used for that purpose. *Lapelle* v. *Paper Co.*, 71 N. H. 346, 349. Under the circumstances, the jury were warranted in finding that the file was a dangerous tool to use for cutting off the paper from the revolving rolls, that the plaintiff did not know or appreciate that fact, and that it was furnished by the defendant for such use. Upon that theory the defendant's liability for its breach of duty is plain.

The defendant's request for an instruction that the jury should not consider the plaintiff's age (eighteen and a half years) upon the question of his appreciation of the risk was properly refused. Whether one understands the perils of his work to such a degree that he is thus enabled, in the exercise of reasonable care for his safety, to protect himself, involves a consideration of his age, intelligence, experience, and special knowledge relating to the situation, as evidentiary facts. To hold as a positive proposition of law that the plaintiff's age had no bearing upon that question would be illogical and unreasonable. As evidence, it may have been of little weight; but it was the province of the jury to determine that question.

Upon the defendant's exceptions to the evidence of the want of a friction-clutch attachment on the machine, and to the remarks of the plaintiff's counsel in argument upon this evidence, in view of the charge to the jury, the members of the court sitting in the case are equally divided, and no decision thereon has been reached. The result under these circumstances is that the ruling of the superior court must stand (*State* v. *Sunapee Dam Co.*, 72 N. H. 114, 144), and the order must be,

*Exceptions overruled: judgment on the verdict.*

PEASLEE, J., did not sit: the others concurred.