Hillsborough, } No. 3577.
May 7, 1946. }

### CATHERINE STANTON *v.* MORRISON MILLS, INC.

*McLane, Davis & Carleton* and *Stanley M. Brown* (*Mr. Brown* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

MARBLE, C. J.   The machines which the plaintiff was tending at the time of the accident were wood-turning lathes, each of which was equipped with an automatic device, referred to in the evidence as a magazine or hopper.   This device comprised two steel uprights, twenty inches high, into the grooves of which the stock (short blocks to be turned into screwdriver handles) was fed.

When the hopper was filled with blocks (18 or 20 altogether) a spring or safety catch near the base of the hopper was pressed down by the weight of the blocks, and a mechanical arm then drew the bottommost block along a flat surface to the revolving knives, where it was fashioned into the finished product and then dropped automatically into a tub.   This process was repeated every 9 or 10 seconds until the hopper was empty.

The plaintiff undertook to keep the magazines of five machines filled with blocks.   She stated that whenever a block got out of line she called the foreman, as she had been told to do, and did not attempt to adjust the block herself.

There was evidence which would justify a finding that a guard could have been installed on each of the defendant's machines which would have prevented an operative's hand from being drawn into the knives.

The plaintiff had worked on the lathes in question for only two and a half days when she received her injury.   There was testimony

to the effect that three machines were all that the ordinary operative could tend efficiently and that a girl who tried to feed blocks to five machines would probably find the first machine empty when she returned to it.

According to the medical testimony, the plaintiff was "a little slow" mentally. This opinion is corroborated by her "conflicting and confusing statements of the facts in evidence" (*Olgiati* v. *Company*, 80 N. H. 399, 402).

The defendant's mechanical superintendent described the operation of the machines as follows: "An operator running three machines fills three hoppers, starts the motors and they come up to speed, and they walk along and by pressing a lever on the side they start the operation of the carriage on each machine. Then they walk back and forth from the three machines, picking the blocks up and putting them in the hoppers and keeping the hoppers full. They don't pick up only one at a time unless there is room for only one in the hopper. If there is room for two or three, they put in two or three."

Although the plaintiff testified that she usually placed several blocks in the magazine at the same time, she also stated that the foreman "didn't say whether there were supposed to be several." She understood that she was expected merely to put blocks into the magazine and keep it full.

There were no witnesses to the accident. The plaintiff declared that she placed a single block in the empty magazine of one of the machines (she was unable to state which machine it was) and that she had no remembrance of what happened after that until she found that her hand was gone. She was "working fast" and turning out approximately sixteen hundred handles an hour. The jury may well have believed that her failure to recall precisely what she did was attributable to the speed with which she was obliged to work.

Her counsel contended throughout the trial that the jurors were entitled to find that she pressed the block down on the safety catch to release it (a single block was not heavy enough to accomplish this result by its own weight) and that her hand was carried to the knives by the inward moving mechanism. The Presiding Justice charged the jurors that if they did not find "that the accident happened as claimed by the plaintiff, that is, by her hand being drawn through the magazine slot against the knives," their verdict would be for the defendant.

As tending to show that the plaintiff's hand was not caught and mangled in any of the gears at the side of the machine, attention is

called to the fact that a blood-stained block was found after the accident "lying just in front of the cutter" on one of the machines and that a physician who was called to treat the plaintiff immediately after she received her injury stated that the plaintiff's hand was "cut" back of the knuckles, causing a "partial amputation." Attention is further called to the plaintiff's assertion that she would not, and did not, put her hand near the knives and that "if a piece of wood got into the slot and got stuck in any way," she "wouldn't touch it."

The elimination of these contingencies, it is suggested, leaves the claimed course of the plaintiff's conduct as the only means by which the accident could have occurred.

That the plaintiff had at times released a single block which rested on the "fingers" of the safety catch is indicated by the following excerpt from her testimony: "Q. Now on these other machines that were empty when you got back to them, how would you put the sticks into them? A. Drop them down from the top. . . . Q. When you dropped one in, where would it stop? A. Right here, I think it was. Q. Right here? You are indicating the top of it [the safety catch]? A. Yes. Q. And how would you get it . . . down into the slot where the machine picked it up? How would you do it; in what way? A. Well, lift it up like this. Q. Would you lift it up or push it down? What would you do? . . . A. You'd let it go down. Q. You'd lift it up a little and let it go down by; is that the way you'd do it? A. Yes. Q. Had you done that on other machines before you came to the one where you were injured? A. Yes."

The fact that a person has previously done an act in a particular way tends to prove that he did the same act in the same way at the time in question. *Parkinson* v. *Railroad*, 61 N. H. 416, 417; *Lyman* v. *Railroad*, 66 N. H. 200, 204. Coupled with the evidence which tended to negative other ways in which the plaintiff might have been injured, the above-quoted testimony furnished the basis for a reasonable deduction that the accident was caused in the manner claimed. *Saad* v. *Papageorge*, 82 N. H. 294, 296; *Kruger* v. *Company*, 84 N. H. 290, 294; *Emery* v. *Company*, 89 N. H. 165, 167.

The defendant's foreman stated that the plaintiff "was specifically forbidden to ever reach after one of the blocks if it should fall out of the feeder." Since he failed to mention any other specific act which she had been expressly cautioned not to perform, it could be found inferentially that she had not been warned that there was any danger in pressing a block down upon the safety catch. Such an inference

would be proper, since it is not necessary that lack of instructions be proved by direct testimony. *Upton* v. *Company*, 81 N. H. 489, 494.

It had been such a common practice in the defendant's mill for operatives to "slam" a block or blocks down upon the safety catch of the various machines that the defendant had found it necessary to reinforce the surface underneath the catch with a strip of steel. A representative of a labor union testified, subject to the defendant's exception, that he had told the defendant's manager two or three times before the plaintiff was injured "that the machines should be guarded, that they were unsafe, especially for women folks," and that one of the reasons for his complaint was the danger that operatives might have their hands "drawn into the knives." This evidence was admissible as an express communication to the defendant charging it with knowledge of the particular hazard attending the absence of a guard. 2 Wig. Ev. (3d *ed.*), *ss.* 245, 252; *Dowling* v. *Shattuck*, 91 N. H. 234, 239.

In view of the operatives' practice, above mentioned, and the failure of the defendant to warn the plaintiff of the danger involved in such a practice, we believe that it was for the jury to determine whether the defendant ought not to have anticipated that the plaintiff might force a single block down by the safety catch to the bottom of the magazine and by so doing subject herself to injury. See *Lapelle* v. *Company*, 71 N. H. 346, 349; *Hamel* v. *Company*, 73 N. H. 386, 387, 388; *Charrier* v. *Railroad*, 75 N. H. 59, 62; *Isabelle* v. *Company*, 93 N. H. 264, 266, 267.

Causal negligence on the defendant's part could therefore be found. The issues of contributory negligence and assumption of risk were clearly for the jury. *Isabelle* v. *Company, supra*, 267, and cases cited. See also, *Slack* v. *Carter*, 72 N. H. 267, 268; *Olgiati* v. *Company*, 80 N. H. 399, 402. It follows that the trial Court did not err in denying the defendant's motions.

The plaintiff, however, is not entitled to judgment. It was shown repeatedly (and each time subject to the defendant's exception) that guards had been installed on the defendant's machines after the plaintiff had received her injury. For the reasons fully stated in the recent case of *Blais* v. *Company*, 93 N. H. 370, 373, 374, the defendant's exceptions to the introduction of this testimony must be sustained.

*New trial.*

All concurred.