Grafton,
July 6, 1948. } No. 3742.

## HUGH EVANS *v.* IRVIN FOSTER *& a., d. b. a.*

### Foster Lumber Operations.

*Hazen K. Sturtevant*, for the plaintiff.

*Luigi J. Castello* and *Pike & Aldrich*, for the defendants.

JOHNSTON, J. The motions for a nonsuit and for a directed verdict were properly denied if there was evidence upon which the jury could properly find for the plaintiff. There was considerable testimony concerning the ownership and the operation of the sawmill as between the two defendants. One of the witnesses testified that he had a verbal contract to purchase the mill with both Mr. Moore and Mr. Foster. He further testified without objection or limitation that the latter represented himself as superintendent for Mr. Moore. There was evidence that Mr. Moore financed the operation and of other conduct that could be found to be acts of ownership on the part of Mr. Moore. Each of the defendants could have been found responsible for the failure to instruct and warn.

While the Trial Court correctly charged that there was no duty to warn and instruct the plaintiff of a peril concerning which his knowledge and appreciation equaled those of the defendants (*Ahern* v. *Company*, 75 N. H. 99), it could be found that he was inexperienced. "It can be found that he was inexperienced and all fair minded men will agree that the ordinary man is accustomed to instruct such employees in respect to the dangers incident to the use of even simple appliances when that is the reasonable thing to do." *Marston* v. *Portsmouth*, 78 N. H. 223, 224. From December 4, 1946, to the time

of the accident, the plaintiff worked seventeen days and six hours. Previous to that time, he had for about six years operated a farm and done a light trucking business but had never had any experience working in sawmills.

The edger was a frame about three feet wide and sixteen feet long that enclosed two saws, one stationary and the other movable. The section of the edger that contained the saws and certain rolls was approximately three feet square. It was thirty-one inches from the floor to the top of the table. Underneath the saws and the rolls there was a grille consisting of wooden slats sunk in the floor above the blower pipe. The purpose of this grille or shaker was to let the sawdust sift down into the blower pipe but to keep any knots or bark larger than one inch out. As the marker stood at his end of the edger and took away the lumber and faced the sawyer at the other end, the side of the edger to the marker's right was known as the walk way side. The opposite one was the track side.

The proper way to free the grille, the defendant Foster testified, was to use a five foot peavey handle and to work from the track side. The reason given for this was: "Because a man standing there can see exactly what he was doing." He claimed that he showed the plaintiff at the start of his job how to free the grille in this manner. There was also evidence that even longer edgings were used in place of the peavey handle but on the track side.

The plaintiff was injured by his arm coming in contact with one of the saws while he was loosening the sawdust with an edging about three feet long from the walk way side. He claimed that Mr. Foster when he instructed him worked from the right side facing the sawyer and that Mr. Foster had used edgings. Mr. Evans estimated the peavey handle used by Mr. Foster to be about three feet long and had selected edgings of similar length for this particular work. Accordingly, there was an issue for the jury as to whether the plaintiff had been instructed to use the safe side of the edger and a pole sufficiently long to keep his arm from danger. "The jury was warranted in finding, also, that he did not in fact know that there was a safer method than the one he adopted, and that the defendant ought to have known that the plaintiff did not know how to do the work in a safe manner and did not understand that he was adopting a specially dangerous method." *Disalets* v. *Company*, 74 N. H. 440, 443.

A case apparently similar on its facts, except with respect to the age of the plaintiff, is that of *Godsoe* v. *Company*, 75 N. H. 67. "The plaintiff was injured by catching his hand on some concealed saws,

while employed in removing obstructions therefrom. There were two other safe ways to do the work, but the plaintiff, a boy of sixteen, had seen it done in this way by his superiors on several occasions, had himself so done it in the presence of his superiors, and had never been told and did not know that the method was improper or that it was forbidden. He had no instruction except that gained by observation, and believed that he was procceding to do the work in a safe and proper manner." *Id.*, 67.

The issue of contributory negligence was for the jury. *Roussel* v. *Company*, 80 N. H. 254. It could be found that the plaintiff freed the grille as he had been shown and that he had done so without correction when he was or should have been seen by those in charge. Moreover, the plaintiff testified that he had not been instructed concerning the safe way to do the work, and the evidence tended to prove him inexperienced with respect to sawmills. There was evidence that the saws were more or less concealed from view on the walk way side.

The motion to set aside the verdict raised the additional questions that the verdict was against the weight of the evidence and that it was excessive, but it has not been argued or briefed, and the exception to its denial is overruled.

During the cross-examination of Mr. Foster, the defendants objected to the question, "Now, in 1941, what were you doing," and to that line of interrogation. The objection was overruled subject to exception on the claim of the plaintiff's attorney that he had a right to reflect on the witness's credibility. The record is not clear as to how the examiner expected to accomplish this but the ruling cannot be said to be beyond the court's discretion. "The degree of quality of a witness' trustworthiness may be evidenced *indefinitely . . . i.e.* without relevancy to any particular testimonial trait or element (such as moral veracity, memory, etc.), by *errors of assertion* made by him on specific facts." Wigmore, Code of Evidence (2d *ed.*) 188, 189.

The plaintiff's attorney argued to the jury: "I say this further to you gentlemen that Mr. Foster, and his multitude of bosses around there, watched Mr. Evans do that operation, evidently incorrectly, for twenty-two days, and at no time corrected him." This was a gross but obvious exaggeration. On objection being made, the attorney explained what he meant by saying: "If Mr. Foster wasn't there, Burnham was boss." The jury could not have been misled. Nor can it be said to be reversible error to have argued that Mr. Evans was watched by men whose duty it was to supervise his work. This was a permissible inference from the evidence although there was no

direct testimony that they actually saw the plaintiff cleaning the grille.

To the argument concerning changes in the boarding, no exception was taken.

*Judgment for the plaintiff.*

All concurred.