Hillsborough, }
July 26, 1904. }

### KASJETA v. NASHUA MANUFACTURING CO.

In an action for negligence against an employer, certain evidence deemed sufficient to warrant a finding that the injuries complained of resulted from the defendant's failure to properly instruct an inexperienced and unintelligent servant, who neither knew nor appreciated the danger to be encountered, and at the time of the accident was in the exercise of due care.

Evidence as to instructions given a servant and the manner of their execution is competent upon the question of the master's knowledge of the employee's mental capacity and the care to be exercised toward him.

One mentally deficient is required to exercise only such care as persons of his capacity and understanding generally exercise under like circumstances.

The denial of a request for specific instructions is not erroneous when their substance is included in the charge.

CASE, for personal injuries alleged to have been caused · by the defendants' failure .to sufficiently instruct the plaintiff as to the proper method of operating a cotton picker upon which he was set at work by them and to warn him of the dangers. of such employment. Trial by jury and verdict for the plaintiff. Transferred from the September term, 1903, of the superior court by *Wallace*, C. J.

The defendants excepted to the denial of their request for the following instruction: " Whether the plaintiff was or was not properly taught about running these pickers has no material bearing on the issues here, only as it relates to what he did shortly before and at the time of the accident, relative to the claim that the cotton did not feed into the beater and that he attempted to remedy the trouble. He was not injured because he may not

have known enough about putting on laps or taking them off, or stopping and starting the picker, so that any lack of instruction about that part of the work is immaterial." Upon this point the jury were instructed as follows: "If the plaintiff was not properly instructed as to certain matters connected with the running of the picker, and if you find that those matters had nothing to do with the accident,—did not help to cause it,—then the lack of instruction as to those matters would be immaterial."

At the close of the plaintiff's evidence the defendants' motions for a nonsuit and the direction of a verdict in their favor were denied, subject to exception.

*Doyle & Lucier,* for the plaintiff.

*George B. French* and *Burns & Burns,* for the defendants.

BINGHAM, J. The plaintiff bases his right of recovery solely upon the defendants' failure to properly instruct him how to operate the machine when the cotton clogged the feed rolls, and to inform him of the presence of the revolving knives in the beater-box and the dangers thereof. In support of their exceptions, the defendants contend that there was no evidence from which it could reasonably be found that they were negligent, and that the plaintiff was in the exercise of due care; also that the dangers arising from the revolving knives were so obvious that the plaintiff must be held to have assumed the risk as a matter of law.

It appears that the fluted feed rolls through which the cotton was drawn were liable to become clogged and to stop, so that the cotton would not pass through them to that part of the machine known as the beater. The defendants were aware this was likely to happen, but they failed to instruct the plaintiff how to remove the cotton from the rolls when clogged, or how to stop the machine, or to inform him that it was necessary to stop it in order to safely remove the cotton from the side of the rolls next to the beater. The plaintiff had never worked in a cotton mill or run a picker before entering the employment of the defendants. He was a foreigner, possessed of less than average intelligence, and was only taught how to put on and take off laps. The defendants knew of his lack of intelligence and his inexperience. He had worked but a few days when the accident occurred. On the morning of the accident the feed rolls became clogged and stopped. The superintendent, observing that the feed rolls had stopped, swore in an excited manner, shook his fist at the plaintiff, told him to start up his machine, to keep it running, and, without tendering any assistance, left him. The plaintiff did not know what to do to start the feed rolls. No one came to his assistance.

It was necessary that he should act quickly, for the other three machines in his charge were running and required attention. The machine was running, with the exception of the feed rolls and the apron. The plaintiff did not know how to stop it, or the necessity for so doing to enable him to safely remove the cotton. His first attempt to free the rolls was by pulling the cotton back from the side where it entered them. Not being successful, he raised the cover to the beater and, seeing some cotton between the feed rolls, he reached down to remove it. The revolving knives struck and injured his hand. He did not know there were revolving knives in the space within the box; he had never before looked in, or been informed what was there. At the time he raised the cover he saw nothing but the feed rolls and the cotton. The jury had a view, and saw the knives at rest and in motion. When the knives are in motion they revolve so rapidly that one can see nothing of them except a faint blur. No one can safely put his hand into the beater-box, when the knives are in motion, to remove the cotton from the rolls; and the plaintiff would not have done so had he known the knives were there.

· From this evidence the jury might properly conclude that it was the duty of the plaintiff to free the clogged feed rolls; that its execution was beset with dangers to a person of the plaintiff's inexperience, want of instruction, and lack of intelligence; that the defendants could reasonably have anticipated that such a person as he would undertake to perform this duty in the manner he undertook to do it; and that they were negligent in not warning him of the dangers attendant upon such action, and in not instructing him how the duty might be performed with safety; also that the plaintiff, in undertaking to free the rolls, was in the exercise of due care. *Creachen* v. *Company*, 209 Pa. St. 6.

As the plaintiff was a person of less than average intelligence, the degree of care which the law required him to exercise was such as men of his capacity and understanding generally exercise under like circumstances—not such as men of average intelligence exercise. *Bresnehan* v. *Gove*, 71 N. H. 236, 239; *Boyce* v. *Johnson*, 72 N. H. 41, 43. And in view of the plaintiff's lack of intelligence, knowledge, and experience, the rapidity with which the beater knives revolved, the fact that he had never seen them and did not know they were in the box, and that when he raised the cover he saw nothing but the feed rolls and the cotton, and thought there was only air within the space, it cannot be said as a matter of law that he knew of the presence of the revolving knives, knew and appreciated the danger to be encountered, and voluntarily assumed the risk. *Slack* v. *Carter*, 72 N. H. 267, and cases there cited.

The first request for instructions, except so far as given, was properly denied. The evidence relating to the instructions given the plaintiff and the way in which he executed them was competent. It tended to prove the defendants' knowledge of the plaintiff's intelligence, or lack of intelligence, and the degree of care which they should exercise toward him by reason of that knowledge. The other requests, so far as they were competent, were given. The defendants cannot complain because the exact language of their requests was not followed. *Walker* v. *Railroad*, 71 N. H. 271; *Bond* v. *Bean*, 72 N. H. 444; *Elwell* v. *Roper*, 72 N. H. 585.

A material question in the case was what danger a man of the intelligence and experience of the plaintiff ought to see and appreciate on looking into the beater-box. The testimony given by the defendants' witness, Johnson, as to what a man of his expert knowledge and skill could see and appreciate, having been received in evidence without objection, it was open to the plaintiff to inquire on cross-examination of the witness if he had taken steps to ascertain what danger a person of no greater intelligence or experience than the plaintiff could see and appreciate, that the jury might determine what relation his direct testimony had to the issues in the case and the weight to be given it.

The other exceptions taken at the trial have not been urged in argument or brief, and are not considered.

*Exceptions overruled.*

All concurred.