Belknap,
April 6, 1920.

## ROSABELLE B. GRAHAM *v.* ANDREW WEBER.

In an action for personal injuries, under a plea of a release, evidence that the defendant's agent, without investigation, told the plaintiff that "she could not get anything" and that the plaintiff executed the release in reliance thereon, warranted a finding that the statement was made recklessly, with a conscious indifference as to its truth, and hence that the release was procured by fraudulent methods.

Where the defendant pleads a release which is shown to have been procured by fraud, the jury may consider the fact that it was so obtained as evidence that the defendant was conscious of some infirmity in his defence and that he was liable to be defeated in a fair trial relating to its merits.

An employee may properly assume that his employer, who is actively managing the business and undertakes to instruct him, understands how to operate the machine at which the employee is set to work.

The plaintiff, a young woman dull of perception, was directed to grind apples in

a common kitchen meat grinder, situated in a dark place and to which power was applied in a makeshift manner: on the foregoing and other evidence the findings were warranted that she did not appreciate the dangers of her employment and was not properly instructed in relation thereto, that the workplace was not reasonably safe and the grinder was not a suitable and proper machine as installed and operated.

Where a request for instructions is included in the charge, an exception that the court did not make use of the specific language employed in the request will be overruled.

CASE, for negligence, to recover for personal injuries received by the plaintiff while in the employment of the defendant in his bakery. The plaintiff's principal work was dish washing, but on the third day of her employment the defendant requested her to grind material for mince pies. The grinder used was an ordinary kitchen meat grinder, but the hand crank had been removed from it, and it was attached to a power-driven pulley some fifteen inches in diameter, and was driven by electrical power. The grinder was screwed to a board about fifteen inches long. One end of the board was supported by a cleat nailed to the side of an elevator shaft opposite and some fifteen inches from the side of the pulley, and the other end was held in place by the attachment of the meat grinder to the pulley. The plaintiff was required to perform her work in the fifteen inch space between the belt running over the pulley and the side of the elevator shaft.

The plaintiff was grinding unpeeled quartered apples at the time of the accident. The machine became clogged in grinding the apples, and she put her hand on top of the grinder, and pressed the apples down with her fingers, as she said she was instructed to do, and in doing so her fingers were caught in the grinder and crushed.

Trial by jury and verdict for the plaintiff. The jury had a view of the premises where the plaintiff was employed.

A short time after the accident the defendant obtained a release from the plaintiff. At the close of the plaintiff's evidence the defendant made a motion for a nonsuit, and at the close of all the evidence, for a directed verdict. Both motions were denied subject to the defendant's exceptions. Exceptions were taken to the refusal of the court to give requested instructions, and to the charge. Exceptions were also taken to evidence, and to the denial of a motion for a separate trial upon the issue involving the validity of the release. Other evidence relevant to the exceptions appears in the opinion. Transferred from the March term, 1919, of the superior court, by *Sawyer*, J.

*Frank M. Beckford* and *Owen & Veazey* (*Mr. Beckford* orally), for the plaintiff.

*Jewett & Jewett* and *Streeter, Demond, Woodworth & Sulloway* (*Mr. Jonathan Piper* orally), for the defendant.

PLUMMER, J. The first contention of the defendant is that there was no evidence which warranted the finding of the jury that the release was obtained by fraud. The release was secured by an agent who represented the company that insured the defendant. His conduct is open to the inference that he was not dealing fairly and honestly with the plaintiff. The plaintiff was a young woman of less than ordinary intelligence. Shortly after she had received the injury, and was suffering great pain, he went to procure a release from her. He arranged to see her alone. He did not ask her to give him her version of how the accident happened, but without any knowledge of what her claim was relative thereto, according to her undisputed evidence, he immediately proceeded to tell her positively that he had looked over the machinery, and that it wasn't dangerous at all, that the accident was all her fault, that he had many accident cases and that he knew the law, and that she couldn't get anything. She testified that she had never worked on any kind of machinery and did not know anything about it, and that she signed the release because he told her she could not get anything, and she thought he was telling her the truth. He persuaded her to sign a release for fifty dollars, and she lost in the accident three fingers of her right hand.

The method that was employed in obtaining the discharge leads to the conclusion that the only purpose of the agent was to secure it, and how that was accomplished was a matter of no consequence to him. The jury could find that his statement to the plaintiff was made recklessly with a conscious indifference as to its truth, and without caring whether it was true or false. This would establish the fraudulent character of the act. *Shackett* v. *Bickford*, 74 N. H. 57; *Derry* v. *Peek*, 14 App. Cas. 337; *LeLievre* v. *Gould*, 1 Q. B. 491, 498.

It cannot be held that the court was in error in refusing to grant the defendant's motion for a nonsuit or a directed verdict.

The plaintiff claims that the defendant did not furnish her a reasonably safe place in which to work, that the machine was not suitable and proper, and that she was not properly instructed as to the dangers of her employment. The evidence tended to prove that the

plaintiff's working space was inadequate for the work she was called upon to perform, and that the place was dark. We cannot say that this evidence supplemented by the view which the jury had of the premises was not sufficient to warrant them in finding that the work-place was not reasonably safe. *Crowther* v. *Company, ante*, 63, 65.

The machine in which the plaintiff was injured was an ordinary kitchen meat grinder not made or intended to be driven by power. The evidence tended to prove, and the view undoubtedly disclosed, that power was applied to it in a makeshift, unsubstantial manner, and the jury would be justified in finding that it was not a suitable and proper machine as installed and operated.

The plaintiff testified that before she began to operate the machine, the defendant took a handful of each kind of the ingredients to be ground, and put them in the meat grinder, and placed his hand over the top of it, and pressed them down with his fingers; that he told her to be careful, which she understood referred to the mixing of the ingredients; that this was all the instructions the defendant gave her relative to operating the machine. This evidence would warrant the jury in finding not only that the plaintiff was not properly instructed, but that the instruction to press down the ingredients with her fingers was well calculated to produce the accident.

The defendant urges that the plaintiff knew and appreciated the dangers incident to operating the meat grinder, and therefore that she assumed this danger of her employment and cannot recover. It is probably true that she knew if her fingers were caught in the grinder they would be injured. But she says she never worked upon a machine before, driven by power, and did not appreciate the danger. Her assertion is not unreasonable. She was a young woman of dull perception, and was called to operate a common kitchen meat grinder such as she had seen and handled many times, but those that she had been familiar with were turned by hand, and there was no danger in operating them in that manner. And it is not strange that she did not appreciate that one of these little kitchen meat grinders became dangerous to operate when driven by power. It cannot be held as a matter of law that she assumed this danger of her employment.

The defendant's position that the jury must find upon the evidence that the plaintiff was guilty of contributory negligence is untenable.

As stated above, the plaintiff's testimony was that the defendant in instructing her how to operate the grinder placed his hand over

the top of it, and pressed down the ingredients with his fingers. If
the jury gave credence to her statement, which was their privilege,
she was doing exactly as the defendant had directed her to do. The
plaintiff had a right to assume that her employer, who was the
owner and manager of the bakery, understood how to operate the
machine, and that it was safe to follow his instructions, and in so
doing it cannot be said that all reasonable men would agree that
she was guilty of negligence. *Weeks* v. *Company*, 78 N. H. 26, 30.

The defendant's first two and fourth requests for instructions
which were refused are as follows: "There is no evidence of negli-
gence on the part of the defendant as to the condition or kind of the
meat grinder used from which it can be found that the accident was
caused thereby. There is no evidence from which it can be found
that the meat grinder was defective. There is no evidence that the
defendant failed to warn the plaintiff of any dangers which the plain-
tiff did not know of." In view of the discussion in the opinion rela-
tive to the evidence and its adequacy to support the verdict, it would
seem unnecessary to give these requests extended consideration. It
is sufficient to say that such instructions were not required by the
evidence. The tenth request for instructions which was denied was
as follows: "If you find that the plaintiff stated to Mr. Mahoney the
agent of the insurance company that the accident was due to her
own fault the agent was justified in stating to her that she had no
case. You will then find on all the evidence that the release was
valid and the plaintiff cannot therefore recover." There was no
evidence that the plaintiff stated in the presence of the agent that
the accident was her fault until he had informed and persuaded her
that she had no case, and she was about to sign the release. The
evidence that she said in the agent's presence that it was her fault
came from the defendant's wife who was called in to sign the release
as a witness after the agent had concluded his private conference with
the plaintiff. And the plaintiff testified without contradiction that
the agent said to her in substance that she must acknowledge before
the defendant's wife that she was to blame. It was not error to refuse
this request.

The other seven requests are included in the charge, and no excep-
tion can be sustained because the court did not make use of the
specific language employed by the defendant in his requests. *Wheeler*
v. *Railway*, 70 N. H. 607, 615; *Walker* v. *Railroad*, 71 N. H. 271, 273;
*Bond* v. *Bean*, 72 N. H. 444; *Kasjeta* v. *Company*, 73 N. H. 22, 25;
*Richmond* v. *Bethlehem*, 79 N. H. 78.

The court instructed the jury that if they found the release was secured by fraud, they would be entitled to consider "the fact that it was so obtained for whatever it is worth as evidence of the fact that the defendant's agent, Mr. Mahoney, was conscious of some infirmity in his defence which was liable to defeat it in a fair trial relating to its merits." The defendant excepted to this instruction. In *Pearson* v. *Company,* 69 N. H. 584, it appeared in evidence to which exception was taken, that the defendants in a previous suit appertaining to the same matter, unjustifiably caused the arrest of the plaintiff to enforce a claim against him. The court held the evidence competent, and in passing upon its competency said: "The evidence tended to show that the defendants were unwilling to submit their claim to the usual course of litigation, but felt the need of resorting to means of oppression to compel a settlement, — that they were conscious of some infirmity in their claim which was liable to defeat it in a fair trial relating to its merits." While that case is unlike the case at bar, it would seem that the same principle is involved. There the defendants committed an act of oppression to aid in the enforcement of their demands, here the defendant by his agent, resorted to fraudulent methods to obtain a release from a claim against him. We believe the principle enunciated in *Pearson* v. *Company* is sound, and that it applies to this case.

The defendant's exceptions to evidence and to the denial of his motion for a separate trial upon the issue involving the validity of the release have not been argued, and are understood to be waived.

*Exceptions overruled.*

PEASLEE, J., was absent: the others concurred.