Strafford,  
March 1, 1921.

FORREST R. CARPENTER *v.* SALMON FALLS MANUFACTURING CO. *& a.*

A servant in charge of a boiler house was injured by the negligence of a third party in removing a boiler therefrom under contract with the master. As to such contractor, the servant on certain evidence was held to be within the scope of his employment and the questions of assumption of risk and of contributory negligence were for the jury.

The master in such case is not relieved from his duty to provide for his servant a reasonably safe work-place.

CASE, for negligence. The plaintiff was employed as engineer in charge of the company's power house. The company sold two old boilers, situated in the power house, to Gutterson & Gould, who were to cut up and remove the same. The plaintiff was injured by the falling of a section of the boiler casing while the process of removal by Gutterson & Gould's servants was going on. Further facts are stated in the opinion.

At the close of the plaintiff's evidence the defendants moved for a nonsuit, and agreed. that, if the motion was granted and the ruling should be reversed upon exception, the plaintiff should have judgment for $2500. Thereupon the court ordered a nonsuit in favor of each defendant and the plaintiff excepted. Transferred from the February term, 1920, of the superior court by *Branch*, J.

*Hughes & Doe* (*Mr. Doe* orally), for the plaintiff.

*Snow, Snow & Cooper* (*Mr. Cooper* orally), for the Salmon Falls Mfg. Co.

*Alvin J. Lucier* (by brief and orally), for Gutterson & Gould.

PEASLEE, J. The plaintiff was in charge of the company's boiler house, in which Gutterson & Gould were engaged in cutting up and removing old boilers which they had bought of the company. The boiler casings were circular and the bottom section, which Zecchini (Gutterson & Gould's servant) was cutting into segments by the use of a torch, was about six feet high, and rested upon an insecurely arranged platform constructed by him. When the plaintiff came to the place there were two large segments left standing. Zecchini was just finishing cutting one of these into two, and the plaintiff, seeing one of these smaller segments about to fall, held it up until Zecchini could take it. The plaintiff then stepped back to what he judged to be a safe place, and in the course of Zecchini's operations with the smaller segments the remaining large one fell and injured the plaintiff.

Upon the issue of Zecchini's negligence and the plaintiff's care the case does not differ essentially from *Corbett* v. *Hines*, *ante*, 22. The argument that the plaintiff was in fault because he did not stand clear of possible harm from the larger segment, was a proper one to urge upon the jury, but it is not conclusive of the issue. The trouble appeared to be with the smaller segments, which of course stood less securely than the larger one. Whether the plaintiff ought to have seen and appreciated the insecurity of the platform and the likelihood that Zecchini's operations would cause the larger segment to fall, is a matter about which reasonable men might differ.

The argument that the plaintiff was a mere volunteer to whom no duty was owed to exercise care, is not supported by the evidence. He was in charge of the boiler house and there were pipes which were

likely to be damaged by Zecchini's operations. In seeking to avert damage from the falling of the smaller segments and in pausing a moment to see how Zecchini got on with the affair, the plaintiff was well within the scope of his employment, and of his employer's rights as they related to Zecchini's employers.

There was evidence for the jury upon the issues between the plaintiff and Gutterson & Gould, and in accordance with the stipulation in the case the plaintiff is entitled to a judgment against them.

As to the liability of the plaintiff's employer, a different question is presented. It was a part of the plaintiff's work to look after the company's property in the boiler house, and it was a part of the company's duty to see that this work-place was reasonably safe. If it permitted those who were not its servants to conduct operations there, the duty was not changed. Whatever the contract was under which the servants of Gutterson & Gould were operating at the plaintiff's work-place, it did not relieve the company from its liability to the plaintiff for conditions which it permitted to be created there. *Story* v. *Railroad*, 70 N. H. 364, 368. "Where the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him." *Pittsfield, &c Company* v. *Company*, 71 N. H. 522, 530.

The removal of these boilers involved the safety of the place designed for the plaintiff to prosecute his work. Even if it were conceded that, as the company claims, it would not be liable for momentary dangers created by Zecchini's carelessness, it would not be entitled to a verdict as matter of law. The company was certainly bound to see that the methods adopted and the results arrived at were reasonably safe. It did not perform this duty, but permitted the work to be carried on by what might be found to be a dangerous method, likely to cause injury to the plaintiff in the course of his work. Zecchini constructed and worked upon a faulty platform, and it could also be found that he should either have supported the segments in some way or else not have left them standing. If reasonable supervision of Zecchini's methods and work would have relieved the company from liability, it does not appear that it performed such duty.

The question whether the plaintiff could recover under the employers' liability act (Laws 1911, c. 163, s. 1) has been argued, but is not necessarily involved. The case transfers the question whether the plaintiff was entitled to go to the jury. As the evidence was sufficient for the purpose, even if the action is treated

as one at common law, the applicability of the statute has not been considered.

*Judgment for the plaintiff.*

All concurred.