Rockingham, ⎱
April 7, 1925. ⎰

## ANTONIO DZIEDZIE *v.* NEWMARKET MANUFACTURING COMPANY.

When the situation in which an employee is put to work contains a danger which would be apparent to one of average intelligence, it may be found to be negligence on the part of the employer not to warn and instruct an employee of obviously less than average intelligence about the danger, or to let him do the work at all.

A foreman under whose direction an employee is put to work assisting the foreman in a place of danger is the agent of the employer as to the matter of putting the employee to work in such a place and warning or instructing him regarding the danger, and his negligence in that respect is chargeable to the employer.

In such a case, if negligence of the foreman in the conduct of the work as a fellow servant of the employee concurs with his negligence as agent of the employer to cause injury to the employee, the employer is liable.

CASE, for negligence at common law, for personal injuries to an employee. A shaft of ice had formed from an upper roof of the defendant's building to the roof where the plaintiff was working, and while he was shoveling off the snow near its base, it fell and hurt him. Trial by jury before *Kivel*, C. J. Further facts appear in the opinion. Transferred on the plaintiff's exceptions to a nonsuit and exclusion of evidence.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Lucier & Lucier* (*Mr. A. J. Lucier* orally), for the defendant.

ALLEN, J. There was evidence of the plaintiff's deficient intelligence. Aside from whatever confirming evidence his presence before the jury gave, the testimony that he was slow, and it was hard for him to think, understand and learn, was sufficient to support a finding that he had "little understanding and judgment." The persuading effect of the evidence and to what extent it showed him thus deficient was so clearly for the jury's consideration that discussion of it appears unnecessary. If the lack of average intelligence were found, the evidence of the plaintiff's employment by the defendant for over two years as an unskilled laborer without making progress warranted an inference that the defendant knew of it.

If deficient intelligence to the defendant's knowledge be found as a fact, the duty to use due care for the plaintiff's safety involved consideration of the fact. While the situation contained no danger

connected with his injury which was not obvious to one of average intelligence, and while to such a person there was therefore no duty of instruction or warning (*Dube* v. *Gay,* 69 N. H. 670; *Gaudette* v. *Railroad,* 74 N. H. 597; *Ahern* v. *Company,* 75 N. H. 99; *Cronin* v. *Company,* 75 N. H. 319), to one below such intelligence the danger might make it negligent either not to warn and instruct him about it (*Disalets* v. *Company,* 74 N. H. 440; *Driscoll* v. *Rolfe,* 75 N. H. 586; *Paquette* v. *Company,* 79 N. H. 288; *Graham* v. *Weber,* 79 N. H. 393), or to let him do the work at all (*Proulx* v. *Goodrich,* 77 N. H. 297, 298; *Smith* v. *Company,* 77 N. H. 391; *Richardson* v. *Adams,* 77 N. H. 571).

The master's duty of due care to give special protection to a servant mentally deficient arises from the latter's failure without fault to appreciate dangers ordinarily obvious. Lack of average intelligence is an evidentiary item in showing if and how far the danger was understood. A danger may be concealed by the obscurity of intelligence to perceive it as well as by its own inherent obscurity. To such an intelligence a danger otherwise obvious may be a hidden one.

The place where the plaintiff was put to work was dangerous according to the extent and degree of his mental deficiency. The danger arose from a combination of the obvious danger in the physical situation of the roof with the snow and ice on it and the plaintiff's condition which made it a place of concealed danger for him. If his condition was such that a careful employer would have given directions to avoid his exposure to such a danger, then the duty to give them arose. While he knew that he was likely to be hurt if the ice fell and hit him, he did not necessarily know that it was likely to fall or that if it did he was likely to be hurt where and as he stood. From the evidence the jury might find the danger was neither known nor obvious to him and that he was not in fault for being ignorant of it.

Whether the plaintiff was struck by the falling ice or whether he lost his balance when it fell is not a test of the defendant's liability. If he lost his balance and fell without the ice striking him, the conclusion that he fell in that manner by reason of the falling ice rather than independently and regardless of it is one, if not the only one, fairly to be drawn.

The evidence of the defendant's negligence and its causal connection with the injury is sufficiently adequate. Since the negligence depends on the plaintiff's ignorance of the danger, it follows that there is also sufficient evidence that he did not assume its risk.

The removal of the snow and ice from the roof was the foreman's work and he took the plaintiff with him to help do the work under his charge and direction. It is urged that the negligence on which recovery is sought was of a fellow servant.

The negligence of servants whose work is to maintain conditions of safety is not within the application of the fellow servant rule. *Jaques* v. *Company*, 66 N. H. 482; *Wallace* v. *Railroad*, 72 N. H. 504, 513, 514. The negligence of a servant for the consequences of which to a fellow servant the master is not liable is limited to conduct in the execution of work as a matter of service rather than agency. The master is required to make it reasonably safe to do the work, but is not liable for the unanticipated negligence of servants in the course of their work as such. *Galvin* v. *Pierce*, 72 N. H. 79; *McLaine* v. *Company*, 71 N. H. 294; *Tilley* v. *Company*, 74 N. H. 316. So far as warning and instruction are reasonably required to furnish conditions of safety, the master is liable if they are not given. So far as they are incidental to the nature of the work and their need arises out of its course and progress, the duty to give them may be delegated.

"When the nature of the work reasonably demands rules or precautions, the master's duty arises. The master's duty is performed by the adoption of a reasonably suitable method. If ordinary care requires that a warning of dangers arising from the work should from time to time be given to his servants as the work progresses, it is the master's duty to provide for such a warning. Having made provision for the warning by entrusting the duty to a competent person, he is not liable for the negligence of the person entrusted with the duty." *McLaine* v. *Company, supra,* p. 297.

The foreman here was at the same time both the agent and servant of the defendant in his relations with the plaintiff. He stood in the defendant's place in the discharge of the latter's duty to use care in deciding what work the plaintiff might safely do, considering the kind of a man he was. Leaving it to the foreman to decide what work the plaintiff might and might not safely do and how far he needed special warning and instruction for work assigned to him did not make the foreman's decision an act of service. If the plaintiff's condition was such as to make the place where he got hurt unsafe, or as to entitle him to special warning and instruction so it would be safe for him to do the work, the defendant is liable. But if it was safe to do the work, the defendant is not liable. Negligence on the foreman's part in his direction and charge of the work is not chargeable to the defendant. There is no evidence he was incompetent.

The duty to use care that the danger be made obvious to the plaintiff or else that he be kept beyond its reach was the defendant's. The duty to use care in the removal of the snow and ice from the roof was the foreman's. If there was concurring negligence on the foreman's part both in representing the defendant and as a fellow servant, the defendant is not relieved. *Hamel* v. *Company*, 73 N. H. 386; *Caldon* v. *Company*, 75 N. H. 532.

The grounds on which negligence was claimed are therefore tenable, excepting the last one, which related to the manner of doing the work regardless of the obviousness of the danger to the plaintiff.

The evidence that the room underneath the upper roof was kept heated, thus tending to make the adhesion of the ice shaft to the edge of that roof weaker than appeared to be the case, was properly excluded as immaterial. So far as appeared, the ice gave way and broke regardless of such an insecure fastening, and there was no evidence which tended to show that the temperature of the room accounted in any way for the fall of the shaft. While it might account for the creation and existence of the shaft, it does not account for its destruction. It could not fairly be argued that the weight and fragility of the shaft would have been overcome by an adhesion at the upper end as real as the appearance indicated and that the shaft would have remained intact and in place if the room had not been heated. The disturbance of the fastening at its lower end was the sole cause of its break and fall.

*Exception to nonsuit sustained: exception to evidence overruled.*

All concurred.