Rockingham, }
Jan. 3, 1928. }

VICTOR BILODEAU, *by his next friend, v.* GALE BROTHERS, INC.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Sewall & Waldron* and *George R. Scammon* (*Mr. Sewall* orally), for the defendant.

MARBLE, J. The case was apparently tried on the theory that the defendant had accepted the provisions of the workmen's compensation act (P. L., c. 178), and has been argued on that assumption here. Such is understood to be the fact. The principles of the common law are therefore applicable.

At the time of the accident the plaintiff was sixteen years old and had been employed in the defendant's shoe factory for about two years. He had performed various tasks about the shop, and had run a pounding-down machine, so-called, the gears of which were guarded. Shortly before he received his injury he asked to be transferred to a lasting machine. The defendant leased these machines from the United Shoe Machinery Company, and this company, in accordance with its practice, sent an instructor to the factory to teach the plaintiff how to operate the machine in question. The plaintiff worked under the instructor's direction for two weeks. At the end of that time he was permitted to operate the machine alone. Four days later, while so operating it, he caught his left middle finger between two gears, and received the injury complained of.

The machine was known as a consolidated all-hand lasting machine. It was designed for side lasting only, and was started by means of a pedal. The plaintiff was taught to hold the shoe properly and to drive the tacks in rotation a definite distance from the edge of the inner sole. The tacks were fed through a slot or raceway, which extended downward from the tack-box. The tack-box was located slightly to the left of the operator, and was a "box" only in the sense that the mouth of the slot and the mechanism which kept the tacks in motion were protected by a metal cover fitted with hinges.

When the slot became clogged, as frequently happened, a piece of cardboard was first inserted in it, and if this failed to release the tacks, the cover was then raised and the obstruction removed by

hand. The plaintiff was endeavoring to loosen the tacks in this manner when the accident happened. He had stopped the machine, but stood in position with his foot resting on the pedal. He testifies that he did not intentionally press on the pedal, and it could be found that the subsequent starting of the machine was due to an involuntary movement of his foot. He claims that when the machine started, he was reaching into the tack-box "with his thumb and forefinger to pick out the tacks" and that his "free fingers" were caught "between a steel gear and a smaller brass gear" which ran close to it. His claim is not an improbable one, and the jury, who saw the machine, may well have concluded that the defendant ought reasonably to have anticipated such a contingency. *Graham* v. *Weber*, 79 N. H. 393, 396.

The larger of the gears was in the form of a wheel or disk, and was known as the tack-box gear. It revolved in a vertical plane and was nine inches in diameter. The tack-box was located at about the center of the gear, so that when the cover was turned back the gear itself formed a partition between the mechanism of the tack-box and the other machinery. The small gear was about two and one-quarter inches in diameter and turned horizontally. It did not mesh with the tack-box gear, but was situated on the outer side of that gear close to its revolving rim. The space between the two gears was about half an inch, and as the operator faced the machine the small gear was completely hidden from view.

It is obvious that the situation presented to a workman of the plaintiff's age and limited experience a hazard which might properly call for warning. The duty to warn was in this case a non-delegable one (*Hewett* v. *Association*, 73 N. H. 556, 566, and cases cited), and the defendant could not discharge that duty by entrusting its performance to a third person. *Burke* v. *Railroad*, 82 N. H. 350, 354; *Elliott* v. *Douglas*, 80 N. H. 418; *Carpenter* v. *Company*, 80 N. H. 77, 79, and cases cited. The agent sent by the United Shoe Machinery Company to instruct the plaintiff was an agent adopted by the defendant for the execution of an obligation which devolved upon it as employer. *Story* v. *Railroad*, 70 N. H. 364, 371.

This agent said nothing whatever to the plaintiff about the gears or the danger of getting caught in them, and had the erroneous impression that they were five or six inches apart. The foreman of the lasting room was "positive" that the gears were where the plaintiff "could see them all the time," and estimated the distance between them to be one or two inches.

While the plaintiff knew the gears were there and knew he would get hurt if he put his finger in the tack-box gear, he did not realize that any danger was connected with the small gear or that it was close enough to the large one so that his fingers could be crushed between them. He could not see the small gear while he stood with his foot at the pedal, and there was nothing about his work which required him to take note of its position. He knew nothing about the construction of the machine, and had never examined its parts.

The plaintiff ceased to attend school at the seventh grade. He failed in all the requirements of that grade except manual training and drawing, and at the request of his parents was excused by the commissioner of education from further attendance. He was then between thirteen and fourteen years of age. The superintendent of schools was asked if in his opinion he "could do the work mechanically that the ordinary boy would do at that age" and answered: "Well, I wouldn't say that, because the ordinary boy is a little different kind of boy." He characterized the plaintiff as slow, "slow to learn," — "what we call a slow pupil."

It may be conceded that this testimony affords no basis for a finding that the plaintiff was so lacking in intellectual capacity that he could not safely be permitted to "do the work at all." *Dziedzie* v. *Company*, 81 N. H. 516, 517, and cases cited. Nevertheless, his age and slowness of perception might properly be considered both on the question of the defendant's duty to warn and instruct him and on the question of his appreciation of the risk. *Disalets* v. *Company*, 74 N. H. 440; *Graham* v. *Weber*, 79 N. H. 393, 396; *Dostie* v. *Mills*, 80 N. H. 87; *Olgiati* v. *Company*, 80 N. H. 399. In the light of all the evidence each of these issues was clearly for the jury.

The defendant had the burden of proof, on the issue of contributory negligence. P. L., c. 328, s. 13. The pedal of the machine was rectangular in form and somewhat larger than the operator's foot. It was nearly flush with the platform on which the workman stood The plaintiff describes his position at the time of the accident as follows: "Q. And as you took this tack out, were you standing as the fellow was standing who showed you how? A. Yes. Q. That is, in front of the machine, you mean, or at the side of it? A. In front of it. Q. That is, you were in position there as you work at the machine; is that right? A. Yes."

Under these circumstances it cannot be held as a matter of law that the plaintiff's failure to remove his foot from the pedal con-

stituted contributory negligence. *Lacasse* v. *Atwood*, 80 N. H. 384, 386, 387; *Roussel* v. *Company*, 80 N. H. 254, 256, and cases cited.

The exceptions are therefore overruled.

*Judgment for the plaintiff.*

All concurred.