Rockingham, }
June 27, 1929. }

THOMAS J. TROMBLY *v.* H. P. HOOD & SONS, INC.

*Frederic J. Grady*, for the plaintiff.

*Sewall & Waldron*, for the defendant.

PEASLEE, C. J. At the time of the accident the plaintiff was twenty-five years old and had worked for eight seasons at loading ice, which was taken from the defendant's storehouse in Derry and packed into freight cars. His principal work was in the house dragging out the ice, but he had at times done the packing in the cars, and had assisted in moving empty cars up to the brow for loading. Sometimes, a car would be left with the brakes set, necessitating climbing it to release them. He denied having ever done this before the day of the accident. Upon that morning there was occasion to release the brake. He climbed the car, released the brake, and fell as he was descending.

The car was of standard make and in good condition. It is equipped with two ladders with rungs of three-fourths-inch round iron. One ladder is on the side and the other on the end. They are near enough to the corner of the car for a man to safely swing himself from one to the other. The sill of the car is forty inches above the rail, and the side ladder has two steps below that, while the end one has none. Attached to the sill, between the end ladder and the corner of the car, is a piece of cast iron known as a push bolt. It is used in shoving cars along by an engine on another track, and is not designed for use in climbing the cars.

The plaintiff testified that he went up the end ladder, and came down the same way, and that when he reached the bottom of that ladder he started to swing over to the side ladder, stepped on the push bolt, slipped and fell, receiving the injuries complained of.

At the time he was wearing spiked shoes, as the defendant required of all men working on the ice. There was evidence that these would slip off the slanting surface of the iron push bolt, but that a leather-soled shoe would not. He had not been warned of any danger of his shoes slipping upon iron, and testified that he knew of none.

While other grounds of complaint are alleged, failure to give such warning is the only one which has any semblance of plausibility. The issue then is whether it could be found that the master ought to have anticipated such ignorance and have foreseen that the servant might

in consequence attempt to use the push bolt for a step, and so receive injury. It seems to us that it cannot be so found. There were open, manifest means for ascent and descent provided, and there was nothing about the appearance of the push bolt to indicate that it was designed for such use. The plaintiff did not testify that he thought it was.

Reliance is placed upon evidence that the plaintiff was a "slow thinker," and upon *Dziedzie* v. *Company*, 81 N. H. 516, as authority. The cases are distinguished by the fact that in the earlier one the concealed danger was being encountered for the first time, and might be thought to be such that the master should have known that the unintelligent servant would not appreciate it. In the present instance, the plaintiff had been wearing this kind of shoe about his work for eight seasons, and during that time had five associates, similarly shod. If his incredible statement, that during all that time he had not learned that spiked shoes will slip on iron, is to be believed, it is not enough. To charge the master with negligence in failure to warn, it must also be found that the master should have known of some probability of such ignorance. While lack of knowledge may have existed, it is so improbable that a breach of duty cannot be predicated upon a failure to anticipate it. "Precautionary instruction is a duty only so far as there is reason to apprehend danger to those not instructed." *Dobek* v. *Company*, 79 N. H. 360, 361, and cases cited.

*Judgment for the defendant.*

All concurred.